UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ST SHIPPING AND TRANSPORT, INC.,                 :
                                                 :
            Plaintiff,                           :
                                                 :        07 Civ. 11147 (SAS)
      - against -                                :
                                                 :        ECF CASE
GOLDEN FLEECE MARITIME INC.,                      :
                                                 :
            Defendant.                           :
                                                 :
BLANCA SHIPMANAGEMENT COMPANY,                    :
                                                 :
Third-Party Claimant,                            :
                                                 :
-------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF THIRD PARTY BLANCA SHIPMANAGEMENT COMPANY'S AND DEFENDANT GOLDEN FLEECE MARITIME INC.'S MOTIONS TO VACATE MARITIME ATTACHMENT


Lennon, Murphy & Lennon, LLC
Attorneys for Defendant Golden Fleece Maritime Ltd.
Attorneys for Third Party Claimant Blanca Shipmanagement Company
The Gray Bar Building
420 Lexington Ave., Suite 300
New York, NY 10170

# TABLE OF CONTENTS

PRELIMINARY STATEMENT...................................................................1

FACTS.............................................................................................2

POINT I

IT IS PLAINTIFF'S BURDEN TO PROVE
WHY THE ATTACHMENT SHOULD NOT BE VACATED...................................5

POINT II

THE ATTACHMENT OF FUNDS RESTRAINED BY
GARNISHEE CITIBANK MUST BE VACATED BECAUSE
THE FUNDS BELONG TO CLAIMANT BLANCA...........................................8

    A.  A Rule B attachment does not reach property in which the named Defendant
       does not have an attachable property interest.  Where a Defendant assigns
       property to a third party, it no longer has an attachable property interest in
       those funds...........................................................................8

    B.  The hire payments made by Indian Oil for the charter of the Elli were validly
       assigned to Blanca as of December 15, 2007............................................9

POINT III

THE ATTACHMENT SHOULD BE VACATED
BECAUSE PLAINTIFF ABUSED THE ATTACHMENT REMEDY .......................12

CONCLUSION....................................................................................14

# TABLE OF AUTHORITIES

## Courts of Appeal

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.,* 460 F.3d 434 (2d Cir. 2006)...............6, 7

*Winter Storm Shipping Ltd. v. TPI,* 310 F. 3d 23 (2d Cir. 2005)....................................7, 13, 14

## District Courts

*Blueye Navigation v. Oltenia Navigation,* 1995 U.S. Dist. LEXIS 1844 (S.D.N.Y. Fed 15, 1995)....................................................................................................................7

*Centauri Shipping Ltd. v. Western Bulk Carriers, KS,* 528 F. Supp. 2d 197 (S.D.N.Y. 2007)....14

*Chiquita Int'l Ltd. v. M/V Bosse,* 518 F. Supp. 2d 589 (S.D.N.Y. 2007)............................12

*Daikan Love, S.A. v. Al-Haddad Bros. Enterprises, Inc.,* 584 F. Supp. 782 (S.D.N.Y. 1984).......9

*Dolco Invs. V. Mooriver Dec. Ltd,* 486 F. Supp. 2d 261 (S.D.N.Y. 2007)............................8

*DS Bulk Pte Ltd. v. Calder Seacarrier Corp.,* No. 05 Civ. 10146, 2006 U.S. Dist LEXIS 39242 (S.D.N.Y. 2006) ....................................................................................................8

*Egyptian Navigation Co. v. Baker Investments International Group,* No. 08 Civ. 2080, 2008 U.S. Dist. LEXIS 30804 (S.D.N.Y. 2008) ........................................................8, 9, 10

*International Marine Consultants Inc. v. Karavias,* No. 82 Civ. 8296, 1985 WL 1515 (CMM) (S.D.N.Y. June 3, 1985)..............................................................................................7

*Limonium Maritime, S.A. v. Mizushima Marinera, S.A.,* 961 F. Supp. 600 (S.D.N.Y. 1997).......7

*T&O Shipping, Ltd. v. Source Link Co. Ltd.,* No. 06 Civ 7724, 2006 U.S. Dist. LEXIS 88153 (S.D.N.Y. 2006) ....................................................................................................8

## INDEX OF EXHIBITS

Exhibit A
*Verified Complaint dated May 11, 2007 in action, ST Shipping and Transport v. Golden Fleece, Docket No. 07 Civ. 3730*

Exhibit B
*Ex-Parte Order of Maritime Attachment and Garnishment dated May 11, 2007*

Exhibit C
*Docket Sheet for action, ST Shipping and Transport v. Golden Fleece, Docket No. 07 Civ. 3730*

Exhibit D
*Affidavit of John Keough dated December 10, 2007*

Exhibit E
*Wire Remittance Details for the Payments Attached*

Exhibit F
*Excerpt from Electronic Case Filing Rules and Instructions*

### PRELIMINARY STATEMENT

Pursuant to Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime

Claims of the Federal Rules of Civil Procedure (hereafter "Supplemental Rule __") Defendant,

Golden Fleece Maritime Ltd. (hereinafter "Golden Fleece or "Defendant"), and Third-Party

Claimant, Blanca Shipmanagement Company (hereinafter "Blanca"), by their undersigned

counsel, Lennon, Murphy & Lennon, LLC, submit the within Memorandum of Law in Support

of their Motions to Vacate the Maritime Attachment obtained by Plaintiff, ST Shipping and

Transport, Inc. (hereinafter "Plaintiff").

Blanca moves to vacate the attachment on the basis that it has the sole property interest in

the attached funds.  Golden Fleece moves to vacate the attachment on equitable grounds.  That

is, Plaintiff abused the attachment procedure by failing to reveal the existence of its other

pending action in this District against Golden Fleece at the time this action was filed based on

claims arising from the very same charter party.

Based on the accompanying Declarations of Nancy R. Peterson, Alexandra

Chatzimichailoglou and Duncan McDonald and for the reasons set forth herein, the Ex Parte

Order should be vacated and the attached funds released.

Under Supplemental Rule E(4)(f), "whenever property is arrested or attached, any person

claiming an interest in it shall be entitled to a prompt hearing to show why the arrest or

attachment should not be vacated or other relief granted consistent with these rules."

Here, Plaintiff has not met its burden of showing that the particular funds attached

constitute property in which Defendant Golden Fleece has an ownership interest.  In fact, the

funds attached in this matter were assigned to Blanca prior to the issuance of the Order of

Attachment on December 28, 2008.

Blanca asserts that it is the legal owner of the funds attached at Citibank in New York and that Golden Fleece does not have a property interest in such funds. Consequently, this Honorable Court should vacate the attachment of Blanca's property, order the release of the funds attached pursuant to the Process of Maritime Attachment and Garnishment ("PMAG") issued in this matter and direct Citibank to release said funds to their rightful owner, Blanca.

Furthermore, given Plaintiff's blatant abuse of the attachment procedure discussed in more detail at Point III, *infra*, , the Court should exercise its equitable discretion to vacate the Ex-Parte Orders of Attachment issued against Golden Fleece and dismiss the instant case for lack of jurisdiction.

## **FACTS**

The facts pertaining to the instant Motions to Vacate Maritime Attachment and Dismiss the Complaint are more fully set forth in the Declaration of Nancy R. Peterson ("Peterson Decl."), the Declaration of Alexandra Chatzimichailoglou on behalf of Liquimar Tankers Management Inc (the manager of the ELLI) ("Chatzimichailoglou Decl."), and the Declaration of English Solicitor Duncan McDonald in support of the Motion. However, a short summary of the facts germane to this application is provided below.

Pursuant to a charter party dated May 30, 2003, Plaintiff chartered the ocean going motor vessel ELLI from Golden Fleece for the carriage of cargo. At that time, Golden Fleece was the owner of the ELLI. During the course of the charter, disputes arose between the parties regarding Golden Fleece's alleged failure to maintain the ELLI in its warranted condition.

Almost three years later, on or about May 10, 2007 Plaintiff initiated an action in the Southern District of New York against Golden Fleece seeking security for its claims under the May 30th charter party. The action was assigned to the Honorable Denise L. Cote under Docket

2

No.07-3730.  In order to obtain security for its claims, Plaintiff applied for an Ex Parte Order of

Maritime Attachment Garnishment against Golden Fleece's property within this District in the

amount of $808,307.94, $250,000.00 of which represented Plaintiff's estimated attorneys fees

and costs. *See Verified Complaint dated May 11, 2007 annexed hereto as Exhibit "A."*

Judge Cote granted Plaintiff's request for an Ex-Parte Order of Attachment.  However,

the amount of the Ex-Parte Order was reduced from $808,307.94 to $481,307.94. *See Ex-Parte*

*Order dated May 11, 2007 annexed hereto as Exhibit "B."* Judge Cote, as a general rule, does

not allow claimants security for unaccrued attorney fees and costs.  Thus, the Ex-Parte Order

signed by Judge Cote was issued in the amount of Plaintiff's principal claim only.

It appears that on or about August 22, 2007, Plaintiff attempted to dismiss this action by

filing a Notice on the ECF system. *See Docket Sheet annexed hereto as Exhibit "C."*

Submitting the "Notice" in this fashion clearly did not comply with the rules of this Court and

did not dismiss the case.  In fact, <u>Judge Cote did not dismiss Plaintiff's action against Golden</u>

<u>Fleece until May 9, 2008</u>.  Thus, until May 9, 2008, Plaintiff maintained an open, active

attachment case against Golden Fleece before Judge Cote.  Golden Fleece was neither served nor

otherwise made aware of the action before Judge Cote.

In the meantime, in a transaction having nothing to do with Plaintiff, pursuant to a charter

party dated December 8, 2006, Defendant Golden Fleece chartered the ELLI to non-party Indian

Oil Corporation ("Indian Oil") for the carriage of cargo. *See Peterson Decl., ¶10.* Under the

Golden Fleece-Indian Oil charter party, Indian Oil paid hire to Golden Fleece at regular intervals.

During the course of the Golden Fleece-Indian Oil charter, Golden Fleece decided to sell the

Vessel. *See Peterson Decl., ¶¶11-12.*

3

Pursuant to a Memorandum and Agreement ("MOA") and side letter dated October 26, 2007, Defendant Golden Fleece (Sellers):(1) agreed to sell the ELLI to Blanca (Buyers); and (2) assigned all future earnings of the ship under existing contracts/charter parties to Blanca. *See MOA and Side Letter annexed to Peterson Decl. as Exhibits "1" and "2" respectively.*

The Side Letter expressly states that "it is hereby agreed that after December 15[th] 2007 00:01 local time, Buyers shall be entitled absolutely to all payments of hire made to or to be made by charterers and all such payments shall be the absolute property of the Buyers and shall be held by the Sellers on behalf of the Buyers. The Sellers shall promptly account to the Buyers thereof in full and without deduction or set-off." *See Clause 1, Exhibit "2."*

The MOA provides that delivery was to take place on "January 17, 2008 up to end of current charter with Indian Oil Corporation dated December 8, 2006 as currently extended in Sellers' option. . ." And, the payment of the purchase price was to be made in full on delivery of the Vessel. *See Peterson Decl., ¶18.*

However, regardless of the delivery date, as set forth above, the Side Letter mandated that after December 15, 2007, the Buyers, Blanca, would be entitled to all payments of hire made by Charterers (Indian Oil Corporation) and the Vessel would, in effect be deemed to be delivered to the Buyers, although physical delivery and the closing would not take place until the end of the charter with Indian Oil. All future hire payments under the Golden Fleece-Indian Oil Charter Party were thusly duly and irrevocably assigned to Blanca.

In late December 2007, Plaintiff decided to initiate yet another action against Golden Fleece based on alleged breaches of the charter party of May 2003. While its original action against Golden Fleece was still pending before Judge Cote, on or about December 11, 2007,

Plaintiff filed its second Verified Complaint against Golden Fleece seeking security in the amount of $380,000.00 for its breach of charter party claims.

Plaintiff failed to file this action on a related case basis. In addition, Plaintiff's counsel falsely attested in his Attorney Affidavit in Support for Prayer for Maritime Attachment that "This application is the Plaintiff's *first* request for such relief made to any court." *See Affidavit of John Keough dated December 10, 2007 annexed hereto as Exhibit "D."*

Based on this false Affidavit, on or about December 28, 2007, Plaintiff obtained the second attachment order against Golden Fleece which it has been serving on banks in New York and pursuant to which it attached Blanca's funds. Notably, unlike the action before Judge Cote, the original Order of Attachment issued in this action included all of Plaintiff's estimated attorneys fees and costs in addition to the principal damage claims.

Pursuant to the Ex Parte Order of Attachment and Garnishment dated December 28, 2007, garnishee Citibank restrained three electronic funds transfers ("EFTs") in the amounts of $101,048.48, $271,600.87 and $7,350.65 on or about January 18, 2008, January 30, 2008, and March 17, 2008 respectively. All three EFTs were being sent by non-party, Indian Oil Corporation, to pay for charter hire in reference to the ELLI and are the sole and exclusive property of Blanca as Blanca had been assigned all rights to the charter hire for the ELLI as of December 15, 2007.

Defendant Golden Fleece did not (and does not) have a property interest in the funds held by Citibank. Therefore, Plaintiff's attachment of Blanca's funds in the amounts of $101,048.48, $271,600.87 and $7,350.65 at Citibank N.A., representing charter hire payments for the ELLI under the Golden Fleece-Indian Oil charter party, was improper and should be vacated.

## ARGUMENT

### POINT I

### IT IS PLAINTIFF'S BURDEN TO PROVE
### WHY THE ATTACHMENT SHOULD NOT BE VACATED

A Plaintiff that has obtained and an ex parte Rule B attachment order shoulders the

burden at the post-attachment hearing to prove *inter alia* that "it has a valid prima facie admiralty

claim against the defendant." *See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.,* 460 F.3d

434, 445 (2d Cir. 2006). Supplemental Admiralty Rule E(4)(f) of the Federal Rules of Civil

Procedure provides:

> Whenever property is arrested or attached, any person claiming an interest in it
> shall be entitled to a prompt hearing at which the plaintiff shall be required to
> show why the arrest or attachment should not be vacated or other relief granted
> consistent with these rules.

In such cases, Local Admiralty and Maritime Rule E.1 provides:

> The adversary proceeding following arrest or attachment or garnishment that is
> called for in Supplemental Rule E(4)(f) shall be conducted by a judicial officer
> within three court days, unless otherwise ordered.

It is the plaintiff's burden to prove that the attachment is proper. The Second Circuit

Court of Appeals commented on Rule E(4)(f) in *Aqua Stoli* and established the following

standard:

> [A] district court must vacate an attachment if the plaintiff fails to sustain his
> burden of showing that he has satisfied the requirements of Rules B and E. We
> also believe vacatur is appropriate in other limited circumstances. While, as we
> have noted, the exact scope of a district court's vacatur power is not before us, we
> believe that a district court may vacate the attachment if the defendant shows at
> the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent
> jurisdiction; 2) the plaintiff could obtain in personam jurisdiction over the
> defendant in the district where the plaintiff is located; or 3) the plaintiff has
> already obtained sufficient security for the potential judgment, by attachment or
> otherwise. n5.

> n.5 Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rule B and E. Although Rule E does not explicitly mention a district court's equitable power to vacate an attachment or who bears such a burden, former Local Rule 12 required the defendant to establish any equitable grounds for vacatur, and we believe that defendants still bear that burden under the Supplemental Rules.

*Aqua Stoli*, 460 F.3d at 445.

At the Rule E(4)(f) hearing, a defendant or a party claiming an interest in the attached property may challenge "the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." *Aqua Stoli*, 384 F. Supp. 2d. at 728 (quoting Supp. R. Fed. Civ. P. advisory committee's notes). To satisfy the requirement of Rule B, the Plaintiff has the burden to show that: (a) it has a prima facie valid maritime claim; (b) the named defendant cannot be found within the district; (c) the named defendant's property was within the district; and (d) no other statutory or maritime law bar to the attachment. *Aqua Stoli*, 460 F. 3d at 445.

Furthermore, consistent with *Aqua Stoli* requirement (c) listed above, the property attached must belong to the named defendant and the plaintiff has the burden of proving the plaintiff is the owner of the property. *See, Limonium Maritime, S.A. v. Mizushima Marinera, S.A.*, 961 F. Supp. 600, 607 (S.D.N.Y. 1997) *citing International Marine Consultants Inc. v. Karavias*, No. 82 Civ. 8296, 1985 WL 1515 (CMM), at *3-4 (S.D.N.Y. June 3, 1985). If the plaintiff fails to meets its burden of proving that the defendant owns the property attached, then the attachment must be vacated.

The attachment must be vacated because the "case law, the authorities, and basic logic demonstrate that no *quasi in rem* jurisdiction under Rule B can exist without some *res* to be attached. In fact, for a Rule B attachment to be appropriate, it is clear that the property must be located within the district and that the property must belong to the defendant." *Blueye Navigation v. Oltenia Navigation*, 1995 U.S. Dist. LEXIS 1844, *13 (S.D.N.Y. Fed 15, 1995)

7

(citations omitted); *see also Winter Storm Shipping Ltd. v. TPI*, 310 F. 3d 23, 276 (2nd Cir. 2005)("[o]f course, the defendant's entitlement to the credit or interest in the debt must be clear").

The case of *Dolco Investments, Ltd. v. Moonriver Development. Ltd,* 486 F. Supp. 2d 261 (S.D.N.Y. 2007) is instructive. In that case the "Plaintiff. . . failed on [the] record to establish that the EFT was the property of [the defendant] when received by [garnishee] Citibank." *Id.* at 269. The court went on to hold that because the plaintiff "failed to carry its burden of showing that the attached assets belong to [the defendant] . . . no property of [ the defendant] has been attached [and therefore] the attachment must be vacated." *Id.* at 270.

In the present case, the property that is being restrained by Citibank pursuant to the original Ex Parte Order and PMAG is the property of non-party Blanca, and not Defendant Golden Fleece and thus the attachment should be vacated. For the reasons set forth below, the Plaintiff cannot meet its burden of demonstrating that the attached funds are the property of the Defendant Golden Fleece.

### POINT II

### THE ATTACHMENT OF FUNDS RESTRAINED BY GARNISHEE CITIBANK MUST BE VACATED BECAUSE THE FUNDS BELONG TO CLAIMANT BLANCA

**A. A Rule B attachment does not reach property in which the named Defendant does not have an attachable property interest. Where a Defendant assigns property to a third party before the attachment order issues it no longer has an attachable property interest in those funds**

If a plaintiff cannot show that the property attached belongs to the named defendant, then the court must vacate the attachment. *See Egyptian Navigation Co. v. Baker Investments International Group*, No. 08 Civ. 2080, 2008 U.S. Dist. LEXIS 30804 (S.D.N.Y. 2008) *citing T&O Shipping, Ltd. v. Source Link Co. Ltd.*, No. 06 Civ. 7724, 2006 U.S. Dist. LEXIS 88153

8

(S.D.N.Y. 2006); *DS Bulk Pte Ltd. v. Calder Seacarrier Corp.*, No. 05 Civ. 10146, 2006 U.S. Dist LEXIS 39242 (S.D.N.Y. 2006).

Judge Stein directly addressed the issue of whether the property of an assignee is attachable for the debts of an assignor in the context of a Rule B attachment in *Egyptian Navigation, supra.* He held that where a defendant has assigned property to a third party, that property shall not be subject to an attachment by creditors of the defendant, as it is no longer the defendant's property. This is true notwithstanding the fact that the wire transfer references the named defendant's account information. *See Egyptian Navigation Co.,* 2008 U.S. Dist. LEXIS at *6.

A defendant is not deemed to have a property interest in funds simply because it is somehow connected to the underlying transaction. *See Daikan Love, S.A. v. Al-Haddad Bros. Enterprises, Inc.*, 584 F. Supp. 782, 784 (S.D.N.Y. 1984) where the court held that the interest of a beneficiary in a letter of credit was not attachable as a debt or property since prior to the presentation of the conforming documents, the confirming bank is neither indebted to the beneficiary nor holds any of its property.

These rules apply with equal force to the facts of this case and therefore, the Plaintiff, cannot meet its burden to maintain the attachment of Blanca's funds because it cannot prove that Defendant, Golden Fleece, has a property interest in such funds.

### B. The hire payments made by Indian Oil for the charter of the Elli were validly assigned to Blanca as of December 15, 2007.

In *Egyptian Navigation, supra,* Judge Stein thoroughly discussed the validity of an assignment under English law, such as the one at issue in this case. "An equitable assignment occurs under English law when an assignor, with an interest to transfer his right to a chose in action, informs the assignee that the right is so transferred. Chitty §19-021; Phelps v. Spon-

Smith & Co. (2001) B.P.I.R. 326 P 36.(' It is not necessary for an equitable assignment to follow any particular form, but it is essential that there should be an intention to assign and some act by the assignor showing that he is passing the chose in action to the supposed assignee.') *Egyptian Navigation*, 2008 U.S. Dist. LEXIS 30804 at *14.

Here, as confirmed in the McDonald Declaration, the Side Letter between Golden Fleece and Blanca evinces an intent on the part of Golden Fleece to completely transfer its interest in hire payments under the Golden Fleece-Indian Oil charter party to Blanca. *See McDonald Decl.,* ¶*6.* Furthermore, notice to the debtor is "not a requirement of equitable assignment, which is effective to cut off the rights to the assignor once intention to assign is communicated to the assignee. Holt, 2 K.B. at 4-5; Chitty §§ 19-020, 19021." *Egyptian Navigation*, 2008 U.S. Dist. LEXIS 30804 at * 14-15.

Thus, by making an irrevocable and absolute assignment of charter hire under the Golden Fleece-Indian Oil charter party, Golden Fleece relinquished all property rights to those funds. Also under the terms of the Side Letter, the property rights to the charter hire payments made by Indian Oil after December 15, 2008 became vested in Blanca.

The three payments restrained at Citibank were made well after the assignment took effect (December 15, 2007), and the issuance of the Ex-Parte Order of attachment (December 28, 2007). In addition, all three wires represent hire being sent from charterer Indian Oil for the Golden Fleece-Indian Oil charter of the ELLI. The fact that Golden Fleece was the nominal beneficiary of the funds transfers does not change the fact that Golden Fleece has no legal property interest in those funds.

Charterer, Indian Oil, initiated all three EFT payments attached at Citibank. All three payments were made after December 15, 2007 and represent hire due and owing under the

Golden-Fleece-Indian Oil charter party. The first wire attached in the amount of $101,048.48 represents a payment for the hire invoice dated January 14, 2008. The second wire attached in the amount of $271,600.87 represents a payment for the hire invoice dated January 17, 2008. And, the third wire attached in the amount of $7,350.65 (out of wire in the amount of $271,600.87), represents a payment for the hire invoice dated February 13, 2008. *See Chatzimichailoglou Declaration, ¶8; See also Wire Remittance Details for the Payments Attached annexed hereto as Exhibit "E."*

As set forth in the McDonald Declaration, even had the funds arrived in Golden Fleece's account, Golden Fleece never would have obtained an attachable property interest in those funds, as it would be holding all hire payments made by Indian Oil in trust for Blanca. *See McDonald Declaration, ¶9.* Trust property is immune from claims of the trustee's private creditors. *Id.*

Under English law, no particular wording is required to create a trust. Wherever the intention to create a trust is apparent, it will be given effect. Here, as attested by Mr. McDonald, the facts establish that the wording of the Side Letter created a viable trust in relation to hire payments made by Indian Oil for the charter of the M/T ELLI. *See McDonald Declaration, ¶8.*

As a trust was created whereby Golden Fleece would hold the Indian Oil hire payments for Blanca, third party creditors of Golden Fleece, like Plaintiff, would not be entitled to attach them, even though Golden Fleece was the nominal beneficiary.

Blanca's property is being restrained at Citibank pursuant to the Ex-Parte Order of Attachment issued against Golden Fleece only. This is improper. As is readily apparent, Blanca is not a defendant in this action, is not named as a defendant in the Verified Complaint and the Attachment Order and is not in any way liable for Plaintiff's alleged claims Plaintiff will not be

11

able to carry its burden of showing cause why the attachment should not be vacated because Defendant, Golden Fleece, does not have an attachable property interest in the subject funds

Therefore, Blanca respectfully submits that Plaintiff's attachment of its funds, currently restrained at Citibank pursuant to the Ex-Parte Order of Attachment issued should be vacated.

### POINT III

### THE ATTACHMENT SHOULD BE VACATED
### BECAUSE PLAINTIFF ABUSED THE ATTACHMENT REMEDY

Plaintiff abused the attachment process in at least two ways: (1) it failed to file the instant case on a related case basis, providing Judge Cote with the option of accepting assignment of the case; and (2) its attorney made false representations in his Attorney Affidavit in Support of the Maritime Attachment. Where a plaintiff has abused the attachment process, vacatur is appropriate on equitable grounds..*See Chiquita Int'l Ltd. v. M/V Bosse,* 518 F. Supp. 2d 589, 599-600 (S.D.N.Y. 2007). The due process rights of defendants are already severely circumscribed in the context of Ex-Parte attachment. Thus, violations of procedure are all the more grievous since the defendant does not have the opportunity to be heard.

Had Plaintiff filed the attachment on a related case basis and Judge Cote accepted the case she would have in all likelihood refused to grant Plaintiff's application for attorney's fees and costs. Plaintiff should not be allowed to forum shop for Judges to obtain more favorable results. Furthermore, Plaintiff's failure to reveal its pending action against Golden Fleece in its Affidavit is improper.[1]

---

[1]    Plaintiff will no doubt argue that its "Notice" actually dismissed the case. This is belied both by the docket sheet indicating the true date of dismissal and by this Court's ECF Guidelines. *See excerpt from Electronic Case Filing Rules and Instructions annexed hereto as Exhibit "F."*

The Affidavit presented by Plaintiff's counsel ex parte to this Court was false and failed to disclose critical information to the Court with respect to the Defendant. Plaintiff is required to list all of the prospective defendant's contacts with the district, including any pending action where it may have obtained jurisdiction already.

It is universally accepted by the courts and, in fact, a due process requirement under Rule B, that before the district court may issue an ex parte order authorizing process of maritime attachment and garnishment, the plaintiff's counsel must submit an affidavit setting forth its efforts to determine the defendant's presence in the district. Supplemental Rule B states, specifically, as follows:

> The plaintiff or the plaintiff's attorney must sign and file with the complaint an affidavit stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district. The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.

Supplemental Rule B. Local Rule B.1 goes further, imposing the following requirement:

> The affidavit required by Supplemental Rule B(1) to accompany the complaint, and the affidavit required by Supplemental Rule B(2)(c), shall list the efforts made by and on behalf of the plaintiff to find and serve the defendant within the district.

Loc. Adm. R. B.1. A review of the Affidavit submitted by Plaintiff's counsel to this Court highlights the violation of Golden Fleece's due process rights. Not only did the Affidavit fail to disclose the then pending action against Golden Fleece before Judge Cote, it materially misrepresented the facts by stating affirmatively that this was Plaintiff's first request for this type of relief to this or any other court.

In *Winter Storm Shipping, Ltd. vs. TPI*, 310 F.3d 268, the Second Circuit discussed the importance of the minimal due process rights of defendants under Rule B:

Notwithstanding the unanimity of the post-*Shaffer* appellate decisions upholding the constitutionality of Admiralty Rule B, the drafters of the rules amended Rule B(1) in 1985 in order to address any possible due process concerns. While the practice of granting maritime attachments on an *ex parte* basis remains, Rule B(1) now requires the plaintiff to appear before a judge to procure an attachment. *See* Rule B(1)(b) ("The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment."). The Advisory Committee Notes to the 1985 amendments explain their purpose:

> Rule B(1) has been amended to provide for judicial scrutiny before the issuance of any attachment or garnishment process. Its purpose is to eliminate doubts as to whether the Rule is consistent with the principles of procedural due process enunciated by the Supreme Court (citing cases).

*Winter Storm*, 310 F.3d at 271-272.  Plaintiff's misrepresentations of fact deprived Golden

Fleece of its minimal due process rights.  As Judge Sullivan recently discussed in *Centauri*

*Shipping Ltd. v. Western Bulk Carriers, KS*, 528 F. Supp. 2d 197 (S.D.N.Y. 2007)"

> the Court notes that Counsel's conduct is of particular concern where, as here, Counsel appeared "before a Judge seeking extraordinary relief *ex parte* . . . ." *Four Star Fin. Servs., L.L.C. v. Commonwealth Mgmt. Assocs.*, 166 F. Supp. 2d 805, 810 (S.D.N.Y. 2001) (Martin, J.). Like Judge Martin, this Court emphasizes the fact that [a]ttorneys are officers of the Court, and our system of justice cannot operate efficiently" if the Court is unable to rely on counsel in an *ex parte* proceeding to work diligently to ensure the accuracy of his representations to the Court. *See id.*

*Centauri Shipping*, 528 F.Supp.2d at 201.  Judge Sullivan declined to sanction the plaintiff's

lawyer, who had submitted a false Rule B affidavit, but aptly concluded:

> Rule B is a powerful and in some ways unprecedented tool available to plaintiffs in maritime actions. There are good reasons for it. But[] it is premised on the assurance that plaintiffs and their counsel will act with care and candor in *ex parte* proceedings with the court. That clearly did not happen here.

*Id.* at 203.  The situation in this case with the Attorney Affidavit submitted to the Court ex parte

is no different.

14

Accordingly, because Rule B attachment is an equitable remedy, and Plaintiff has acted most inequitably in violating Golden Fleece's due process rights and otherwise not following proper procedure, the attachment should be vacated and the Verified Complaint should be dismissed for this reason alone.

### CONCLUSION

For the foregoing reasons, the Court should vacate the attachment, direct Citibank to release the restrained funds to Blanca and instruct the Plaintiff to modify the Ex-Parte Order such that no further property of Blanca will be attached in the future. In the alternative, this Court should vacate the attachment on equitable grounds and dismiss the case for lack of jurisdiction.

Dated: July 3, 2008
     Southport, CT

 

Third Party Claimant,
BLANCA SHIPMANAGEMENT COMPANY and

Defendant,
GOLDEN FLEECE MARITIME INC.,

By: _____
    Patrick F. Lennon
    Nancy R. Peterson
    LENNON MURPHY & LENNON, LLC
    The GrayBar Building
    420 Lexington Ave., Suite 300
    New York, NY 10170
    (212) 490-6050 (phone)
    (212) 490-6070 (fax)
    pfl@lenmur.com
    nrp@lenmur.com

15

## AFFIRMATION OF SERVICE

I hereby certify that on July 3, 2008, a copy of the foregoing Memorandum of Law was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's CM/ECF system.

By: _____
Nancy R. Peterson

# EXHIBIT "A"

John R. Keough, III (JK 6013)
WAESCHE, SHEINBAUM & O'REGAN, P.C.
Attorneys for Plaintiff
ST SHIPPING AND TRANPORT INC.
111 Broadway, 4th Floor
New York, New York 10006
Telephone: (212) 227-3550

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                                    **ECF CASE**
-------------------------------------------------------------------X
ST SHIPPING AND TRANSPORT INC.,
                                                                 07 Civ. 3730 (DLC)(JCF)
                                      Plaintiff,

         -against-                                               **VERIFIED COMPLAINT**

GOLDEN FLEECE MARITIME INC.,

                                      Defendant.
-------------------------------------------------------------------X

         Plaintiff ST SHIPPING AND TRANSPORT INC. (hereinafter "ST SHIPPING"),

by its attorneys, Waesche, Sheinbaum & O'Regan, P.C., complaining of Defendant GOLDEN

FLEECE MARITIME INC. (hereinafter "GOLDEN FLEECE"), alleges, upon knowledge with

respect to itself and its own acts and upon information and belief as to all other matters, as

follows:

## JURISDICTION

         1.      This is an admiralty and maritime claim within the meaning of Rule 9(h)

of the Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime

contract. The case falls within this Court's admiralty and maritime jurisdiction pursuant to 28

U.S.C. §1333.

## THE PARTIES

2.    At all times relevant hereto, ST SHIPPING was and still is a corporation duly organized and existing under and by virtue of the laws of Switzerland and with its principal place of business in Switzerland.

3.    At all times relevant hereto, GOLDEN FLEECE was and still is an alien business entity duly organized and existing under the laws of Liberia and with an address at 80 Broad Street, Monrovia, Liberia.

## CLAIMS

4.    On or about May 30, 2003, GOLDEN FLEECE time chartered the motor tanker "ELLI" to ST SHIPPING for a period of 6 months, with ST SHIPPING having the option to extend this period.  The parties subsequently agreed to further extend the charter period to about September 2006.  The cargo to be carried under this contract was "crude and/or dirty petroleum products including fuel oil, LSWR, CBFS, condensate etc."

5.    In this charter party GOLDEN FLEECE warranted the condition of the vessel, not only at the inception of the charter, but also for the period of the contract.

6.    ST SHIPPING fully performed all of its obligations under this charter party.

7.    Despite due demand and in breach of the charter, GOLDEN FLEECE failed to maintain the M/T ELLI in its warranted condition.  In particular, GOLDEN FLEECE failed to maintain the vessel in compliance with the regulations promulgated to implement the provisions of the International Convention for the Prevention of Pollution from Ships, 1973.

8.    A lawsuit between the parties, and arising from this charter party, is presently pending in London, England.  The action is in the High Court of Justice, Queen's Bench Division, Commercial Court, under Claim No. 2005 Folio 1090. In that London action ST

2

SHIPPING has asserted a claim against GOLDEN FLEECE for the losses proximately resulting from the vessel owner's failure to maintain the vessel in its warranted condition.

9.     The action before this Court is brought in order to obtain security in favor of ST SHIPPING for its claim against GOLDEN FLEECE. This action is also brought to obtain security for such additional amounts as will cover ST SHIPPING'S anticipated attorney fees and costs in the London litigation, as well as interest, all of which are recoverable as part of ST SHIPPING'S claim under English law.

10.    The total amount of ST SHIPPING'S claim against GOLDEN FLEECE sought as security includes:

a.     The losses proximately resulting from the breach by GOLDEN FLEECE of the charter party for the M/T ELLI in the sum of $481,307.94 as stated in Schedule 1 of ST SHIPPING's Amended Defence and Counterclaim in the London proceedings;

b.     Interest, costs, and attorney fees, all inclusive, which are anticipated to at least equal the sum of $250,000, and which are recoverable under English law as part of the ST SHIPPING'S claim in the London proceedings;

c.     For a total claim amount sought to be secured of **$808,307.94**.

11.    After investigation, GOLDEN FLEECE cannot be found within this District for the purpose of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, but ST SHIPPING is informed that GOLDEN FLEECE has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, credits, debts, wire transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due to, or for the benefit of GOLDEN FLEECE, including, but not limited to, assets at, being transferred through, or being transferred and/or wired to or from Calyon and/or Citibank N.A. and/or such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein.

3

**WHEREFORE**, Plaintiff ST SHIPPING AND TRANSPORT INC. prays:

a.    That process in due form of law according to the practice of this Court may issue against Defendant GOLDEN FLEECE MARITIME INC., citing it to appear and answer the foregoing, failing which a default will be taken against it for the principal claim amount of $808,307.94, plus interest, costs, and attorney fees;

b.    That since the Defendant GOLDEN FLEECE MARITIME INC. cannot be found within this District pursuant to Supplemental Rule B, all tangible or intangible property of Defendant GOLDEN FLEECE MARITIME INC., up to and including the amount of **$808,307.94** be restrained and attached, including, but not limited to, any cash, funds, credits, debts, wire transfers, accounts, letters of credit, freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due, held, or being transferred for the benefit of Defendant GOLDEN FLEECE MARITIME INC. including, but not limited to, such assets as may be held, received, or transferred in its name or as may be held, received, or transferred for its benefit, at, through, or within the possession, custody, or control of such banking institutions including, but not limited to, Calyon and Citibank N.A. and any such other garnishees upon whom a copy of the Process of Maritime Attachment and Garnishment issued herein may be served;

c.    That the Court enter an order that, to the extent judgment is rendered against Defendant GOLDEN FLEECE MARITIME INC. in the High Court in London, this Court adopts such judgment as a judgment of this Court; and

d.    That Plaintiff ST SHIPPING AND TRANSPORT INC. have such other, further, and different relief as this Court may deem just and proper in the premises.

4

Dated: New York, New York
     May 10, 2007

                WAESCHE, SHEINBAUM & O'REGAN, P.C.
                Attorneys for Plaintiff
                ST SHIPPING AND TRANSPORT INC.

                By: _____ s/ _____
                     John R. Keough, III (JK 6013)
                     111 Broadway, 4th Floor
                     New York, New York  10006
                     (212) 227-3550

## VERIFICATION

STATE OF NEW YORK )
                       :
COUNTY OF NEW YORK )

       JOHN R. KEOUGH, III, being duly sworn, deposes and says:

       1.     That I am a member of the Bar of this Court and am an officer of Waesche, Sheinbaum & O'Regan, P.C., attorneys for the Plaintiff herein.

       2.     That I have read the foregoing Complaint and know the contents thereof, and that the same are true to the best of my knowledge, except those matters alleged upon information and belief, and as to those I believe them to be true.

       3.     That the source of my information and the grounds for my belief as to all matters are documents in the possession of my firm and information provided by the Plaintiff by way of written communications with its representatives.

       4.     That I am authorized to make this verification on behalf of the Plaintiff.

       5.     That the reason this verification is made by me and not by the Plaintiff is that the Plaintiff is a foreign corporation, with no officers or directors presently within this District.

                                       _____
                                          JOHN R. KEOUGH, III

Sworn to before me this
10th day of May, 2007

_____
      NOTARY PUBLIC

SHARON J. POYNTZ
NOTARY PUBLIC, State of New York
No. 43-4820992 Qualified in Richmond County
Certificate Filed in New York County
Commission Expires February 28, 2011

6

# EXHIBIT "B"

**JUDGE COTE** COTE 07 CV 3730

John R. Keough, III (JK 6013)
**WAESCHE, SHEINBAUM & O'REGAN, P.C.**
Attorneys for Plaintiff
ST SHIPPING AND TRANPORT INC.
111 Broadway, 4th Floor
New York, New York 10006
Telephone: (212) 227-3550

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ST SHIPPING AND TRANSPORT INC.,

                                                Plaintiff,

                    -against-

GOLDEN FLEECE MARITIME INC.,

                                                Defendants.
-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/11/2007

**ECF CASE**

07 Civ.

**EX PARTE ORDER DIRECTING
PROCESS OF MARITIME
ATTACHMENT AND
GARNISHMENT**

Upon reviewing the Verified Complaint of the Plaintiff herein, verified on the 10th day of
May, 2007, and the affidavit of John R. Keough, III, sworn to on the same day, that to the best of
his information and belief the Defendant, GOLDEN FLEECE MARITIME INC., cannot be
found within this District for the purpose of an attachment under Rule B(1) of the Supplemental
Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, and
the Court having found that the conditions required by Supplemental Rule B(1) appear to exist,

            **NOW**, upon motion of Waesche, Sheinbaum & O'Regan, P.C., attorneys for the
Plaintiff, it is hereby

            **ORDERED** that the Clerk of this Court is directed forthwith to issue Process of
Maritime Attachment and Garnishment for seizure of all tangible and intangible property
belonging to, claimed by, or being held for the Defendant GOLDEN FLEECE MARITIME

INC., by ABN Amro, Atlantic Bank of New York, American Express Bank, Bank of America, BNP Paribas, Citibank, Deutsche Bank, HSBC USA Bank NA, JPMorgan Chase Bank, Standard Chartered Bank, The Bank of New York, Wachovia Bank, and/or any other garnishee within this District on whom a copy of the Process of Maritime Attachment and Garnishment may be served, including, but not limited to, electronic fund transfers originated by, payable to, or otherwise for the benefit of the Defendant, GOLDEN FLEECE MARITIME, whether to or from the garnishee bank, in an amount up to and including $808,307.94 [handwritten: $ 781,307.94] pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure; and it is further

**ORDERED** that any person claiming an interest in the property attached or garnished pursuant to said Order shall, upon application to the Court, be entitled to a prompt hearing at which the Plaintiff shall be required to show why the attachment and garnishment should not be vacated or other relief granted; and it is further

**ORDERED** that supplemental process enforcing the Court's Order may be issued by the Clerk upon application without further Order of the Court; and it is further

**ORDERED** that following initial service by the United States Marshal or other designated person upon a garnishee, supplemental service of the Process of Maritime Attachment and Garnishment, as well as this Order, may thereafter be made, upon the consent of the garnishee, by way of facsimile transmission or other verifiable electronic means, including e-mail, to each garnishee so personally served and such subsequent service by facsimile or e-mail, if transmitted from within the District, shall be deemed to have been made within the District; and it is further

*with consent of the garnishee,*

**ORDERED** that service on any garnishee as described above is deemed effective continuous service throughout the day from the time of such service through the opening of the garnishee's business the next business day; and it is further

**ORDERED** that pursuant to F.R.C.P. 5(b)(2)(D) each garnishee may consent, in writing, to accept service by any other means; and it is further

**ORDERED** that a copy of this Order be attached to and served with said Process of Maritime Attachment and Garnishment.

Dated: New York, New York
     May ___, 2007

**SO ORDERED.**

_____
U.S.D.J.

# EXHIBIT "C"

CLOSED, ECF

**U.S. District Court**
**United States District Court for the Southern District of New York (Foley Square)**
**CIVIL DOCKET FOR CASE #: 1:07-cv-03730-DLC**

ST Shipping and Transport, Inc. v. Golden Fleece Maritime, Inc.
Assigned to: Judge Denise L. Cote
Demand: $808,000
Cause: 28:1333 Admiralty

Date Filed: 05/11/2007
Date Terminated: 05/09/2008
Jury Demand: None
Nature of Suit: 120 Contract: Marine
Jurisdiction: Federal Question

**Plaintiff**

**ST Shipping and Transport, Inc.**                represented by    **John R. Keough, III**
Waesche, Sheinbaum and O'Regan,
P.C.
111 Broadway
4th Floor
NY, NY 10006
(212) 227-3550
Fax: (212)267-5767
Email: j.keough@waeschelaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Golden Fleece Maritime, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 05/11/2007 | 1 | COMPLAINT against Golden Fleece Maritime, Inc.. (Filing Fee $ 350.00, Receipt Number 614584)Document filed by ST Shipping and Transport, Inc.. (tro) (Entered: 05/14/2007) |
| 05/11/2007 | | SUMMONS ISSUED as to Golden Fleece Maritime, Inc.. (tro) (Entered: 05/14/2007) |
| 05/11/2007 | | Magistrate Judge James C. Francis is so designated. (tro) (Entered: 05/14/2007) |
| 05/11/2007 | | Case Designated ECF. (tro) (Entered: 05/14/2007) |
| 05/11/2007 | 2 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by ST Shipping and Transport, Inc..(tro) (Entered: 05/14/2007) |
| 05/11/2007 | 3 | EX PARTE ORDER directing the clerk to issue Maritime Attachment and |

| | | |
|---|---|---|
| | | Garnishment. ... .. oy Judge Denise L. Cote on 5/11/07) (cd) (Entered: 05/14/2007) |
| 05/11/2007 | 4 | ORDER APP ... T G SPECIAL PROCESS SERVER PURSUANT TO RULES 4 AN ... urther set forth in this document. (Signed by Judge Denise L. Cote on 5/ ... .) (Entered: 05/14/2007) |
| 05/11/2007 | 5 | ORDER direc ... cess of Maritime Attachment and Garnishment in the amount of $4 ... . (Signed by Judge Denise L. Cote on 5/11/07) (jco) (Entered: 05/ ... .) |
| 05/11/2007 | | MARITIME ... MENT AND GARNISHMENT ISSUED as to Golden Fleece Mari ... 5/11/07 in the amount of $808,307.94. (tro) (Entered: 08/31/2007) |
| 08/22/2007 | 6 | NOTICE of L ... . Document filed by ST Shipping and Transport, Inc.. (Foster, John ... . 08/22/2007) |
| 05/09/2008 | 7 | NOTICE of \ ... Dismissal pursuant to Rule 41(a)(1) of the F.R.C.P., the Plaintiff vol ... misses the above-captioned action without prejudice. No adverse part ... an answer or a motion for summary judgment in this action. (Signe ... e Denise L. Cote on 5/9/2008) (tve) (Entered: 05/09/2008) |

| | |
|---|---|
| | R Service Center |
| | saction Receipt |
| | 30/2008 17:19:53 |

| PACER Login: | | Client Code: | Optional for PACER use only |
|---|---|---|---|
| Description: | | Search Criteria: | 1:07-cv-03730-DLC |
| Billable Pages: | | Cost: | 0.08 |

# EXHIBIT "D"

*1389*

John R. Keough, III (JK 6013)
John R. Foster (JF 3635)
**WAESCHE, SHEINBAUM & O'REGAN, P.C.**
Attorneys for Plaintiff
ST SHIPPING AND TRANPORT INC.
111 Broadway, 4th Floor
New York, New York 10006
(212) 227-3550

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

ST SHIPPING AND TRANSPORT INC.

                                    Plaintiff,

        -against-

GOLDEN FLEECE MARITIME INC.,

                                    Defendants.

----------------------------------------------------------------X

**ECF CASE**

07 Civ. 1147 (SAS)

**AFFIDAVIT UNDER
SUPPLEMENTAL RULE B**

STATE OF NEW YORK   )
                                        :   ss:
COUNTY OF NEW YORK  )

        JOHN R. KEOUGH, III, being duly sworn, deposes and says:

        1.      I am a member of the Bar of this Court and am an officer of Waesche, Sheinbaum

& O'Regan, P.C., attorneys for the Plaintiff herein. I am familiar with the circumstances of the

complaint and submit this affidavit in support of Plaintiff's request for the issuance of process of

maritime attachment and garnishment against the property of the Defendant, Golden Fleece

Maritime Inc., an alien business entity, pursuant to Rule B of the Supplemental Rules for Certain

Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

        2.      The Defendant, Golden Fleece Maritime Inc., is party to a maritime contract (time

charter party for the vessel M/T Elli) on which this claim is based, and is an alien business entity

organized and existing under the laws of Liberia and with its principal place of business in Liberia.

3. At my direction, my office did a search of the New York Secretary of State, Division of Corporations; the Transportation Tickler; telephone assistance; and a general Internet search.

4. From this search, my office did not find any listing or reference to the Defendant, Golden Fleece Maritime Inc., in this District or within the State of New York. Likewise, a search of the Internet using Google does not disclose a New York presence. In the circumstances, I believe that the Defendant, Golden Fleece Maritime Inc., cannot be found within this District.

5. Upon information and belief, the Defendant, Golden Fleece Maritime Inc., has, or will have during the pendency of this action, tangible and/or intangible property within this District in the hands of Atlantic Bank of New York, American Express Bank, Bank of America, Citibank, HSBC USA Bank NA, JPMorgan Chase & Co., Standard Chartered Bank, The Bank of New York, Wachovia Bank, and/or other local banks.

6. This application is the Plaintiff's first request for such relief made to any court.

JOHN R. KEOUGH, III

Sworn to before this
10th day of December 2007

NOTARY PUBLIC

MARYANN C. POWERS
Notary Public, State of New York
No 01PO4629292
Qualified in Richmond County
Commission Expires August 31, 2010

2

# EXHIBIT "E"



31 Receive NOtification
[031] Receive Tag
Vers: 02 Date: 2008-01-18 Sender: 0914 STATE BANK OF INDIA Dup Flg: 1 Virt. Cir: 06 Time: 15:56:56 SSN:0368840 ISN:000737 OSN:050084
[221] Delivery Tag
Receiver: 0008 BENE Type: N CITIBANK N.A.
[260] Amount
000010104848
[270] Payment Sequence Number
000737
[320] Send Participant Reference Number
0999508TS0065401
[412] Beneficiary's Bank Information - No Chips Lookup
B CRBAGRAA
ALPHA BANK AE
10 PESMAZOGLOU
ATHENS
**[422] Beneficiary Information - No Chips Lookup**
**GOLDEN FLEECE MARITIME INC**
80 BROAD STREET MONROVIA LIBERIA
GR07 0140 9600 9600 1500 6013 213
[502] Originator Information - No Chips Lookup
D 11083980682
INDIAN OIL CORPORATION LIMITED
REFINERIES DIVISION INDIAN OIL
BHAVAN G 9 ALI YAVAR JUNG MARG
BANDRA E MUMBAI 400 051 INDIA
[510] Originator's Bank Info - Chips Lookup
C 376340
[517] Originator?s Bank Information - CHIPS Supplied Name and Address
C376340
D999900009995
BSBININBB162
STATE BANK OF INDIA
CORPORATE ACCOUNTS GROUP BRANCH
KILLICK HOUSE, CHARANJIT RAJ MARG
MUMBAI 400 001, INDIA
[600] Originator to Beneficiary Info
OFAC CLEARED BY SBI SCO. 08/7056
PMT VIDE HIRE INVOICE DATED 14.01.
2008
[999] Trailer

----Original Tagged start----

31 Receive NOtification

[031] Receive Tag

Vers: 02 Date: 2008-01-30 Sender: 0914 STATE BANK OF INDIA Dup Flg: 1 Virt. Cir: 05 Time: 16:08:38 SSN:0375750 ISN:000704 OSN:051778

[221] Delivery Tag

Receiver: 0008 BENE Type: N CITIBANK N.A.

[260] Amount

000027160087

[270] Payment Sequence Number

000704

[320] Send Participant Reference Number

0999508TS0065690

[412] Beneficiary's Bank Information - No Chips Lookup

B CRBAGRAA

ALPHA BANK AE

10 PESMAZOGLOU

ATHENS

[422] Beneficiary Information - No Chips Lookup

**GOLDEN FLEECE MARITIME INC**

**80 BROAD STREET MONROVIA LIBERIA**

GR70 0140 9600 9600 1500 6013 213

[502] Originator Information - No Chips Lookup

D 11083980682

INDIAN OIL CORPORATION LIMITED

REFINERIES DIVISION INDIAN OIL

BHAVAN G 9 ALI YAVAR JUNG MARG

BANDRA E MUMBAI 400 051 INDIA

[510] Originator's Bank Info - Chips Lookup

C 376340

[517] Originator?s Bank Information - CHIPS Supplied Name and Address

C376340

D999900009995

BSBININBB162

STATE BANK OF INDIA

CORPORATE ACCOUNTS GROUP BRANCH

KILLICK HOUSE, CHARANJIT RAJ MARG

MUMBAI 400 001, INDIA

[600] Originator to Beneficiary Info

OFAC CLEARED BY SBI SCO. 08/7184

HIRE INV NO 17 DT. 17.01.2008

[999] Trailer

---

③

**NOTE TO FTN UNIT: Please hold $7,350.65** *only* **of this payment and release excess funds as per the original wire instructions. This amount together with the other payments totaling $372,649.35 will fully secure this attachment at $380,000. Please delete Golden Fleece Maritime Inc. from our filter as we do not need to screen for further payments.....many thanks, mary**

----Original Tagged start----

[260] Amount

000027160087

**[422] Beneficiary Information - No Chips Lookup**

**D GR0701409600960015006013**

**GOLDEN FLEECE MARITIME INC**

**80 BROAD STREET**

**MONROVIA LIBERIA GR07 0140 9600**

**9600 1500 6013 213**

[502] Originator Information - No Chips Lookup

D 11083980682

INDIAN OIL CORPORATION LIMITED

REFINERIES DIVISION INDIAN OIL

BHAVAN G 9 ALI YAVAR JUNG MARG

BANDRA E MUMBAI 400 051 INDIA

[600] Originator to Beneficiary Info

HIRE INV NO 19 DATED 13.02.2008

[999] Trailer

# EXHIBIT "F"

SDNY ELECTRONIC CASE FILING RULES & INSTRUCTIONS

**18.4    Are Proposed Orders, Proposed Judgments, Stipulations, Voluntary Notices of Dismissal or Consents filed electronically?**

No. Any document that requires the signature of a Judge should not be electronically filed. Proposed orders, judgments, stipulations, voluntary notices of dismissal or consents should not be submitted through the ECF system. Instead they should be sent by e-mail to the Clerk. Proposed orders should be submitted in word processing format (WordPerfect or Word) rather than as a pdf document. Stipulations should be submitted in PDF format. Stipulations must contain ink signatures (faxed signatures are acceptable, the last person to sign can e-mail it to the clerk). Questions may be directed to the Orders, Appeals & Judgments Clerk in Manhattan at (212)805-0143 or in White Plains at (914)390-4000. E-mail the proposed order, judgment, stipulation or voluntary notice of dismissal to:

- For cases assigned to a Manhattan Judge e-mail to:

  **judgments@nysd.uscourts.gov**

- For cases assigned to a White Plains Judge e-mail to:

  **wpclerk@nysd.uscourts.gov**

**18.5    Must a Stipulation, Voluntary Notice of Dismissal or Consent include a traditional ink signature?**

Yes. You cannot substitute s/ for a traditional ink signature for these documents. Faxed signatures are acceptable.

(*See section 8 - Signatures*).

**18.6    Are Orders to Show Cause filed electronically?**

No. An Order to Show Cause (with or without a Temporary Restraining Order) must be submitted in the traditional manner, on paper, to the Orders, Appeals & Judgments clerk. If signed by the Court, the Clerk's Office will electronically file only the Order. After the Order appears on the docket sheet, the attorney must electronically file all supporting papers

**18.7    Are Motions for Admission pro hac vice filed electronically?**

No. A Motion for Admission pro hac vice is filed in the traditional manner, on paper. See the Attorney Admissions page at www.nysd.uscourts.gov for details and sample forms.

**18.8    Are Miscellaneous cases filed electronically?**

No. Miscellaneous cases are filed in the traditional manner, in paper form. Miscellaneous cases are those that use an "M" docket number (eg. "M 8-85") instead of a traditional case number, and require payment of a Miscellaneous filing fee for each document.