UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ST SHIPPING AND TRANSPORT, INC.,

      Plaintiff,

  - against -

GOLDEN FLEECE MARITIME INC.,

      Defendant.

BLANCA SHIPMANAGEMENT COMPANY,

      Third-Party Claimant,

------------------------------------------------------------X

07 Civ. 11147 (SAS)

ECF CASE

## DECLARATION OF NANCY R. PETERSON
## IN SUPPORT OF MOTION TO VACATE

Nancy R. Peterson declares under penalty of perjury of the laws of the United States of America as follows:

1. I am an attorney with the firm, Lennon, Murphy & Lennon, counsel for the Third-Party Claimant herein, Blanca Shipmanagement Company. ('Blanca"), and the Defendant herein, Golden Fleece Maritime Inc. ("Golden Fleece") and I make this declaration based upon my own personal knowledge, information supplied to me by Blanca and/or Golden Fleece, and upon documents that I believe to be true and accurate.

2. The commercial manager of Blanca, Mr. Marios Illiopoulous, is currently on vacation and will verify these facts upon his return in a separate declaration if necessary.

3. I submit this Declaration in support of the Motions to Vacate the Maritime Attachment issued on behalf of Plaintiff, ST Shipping and Transport Inc. ("Plaintiff") in the Southern District of New York. I set out below an explanation of the sale of the motor tanker

"ELLI" and the accompanying assignment of all contracts and proceeds relating to that Vessel to Blanca.

4. At all times material to this action, Blanca was, and still is, a foreign corporation, or other business entity organized and existing under the laws of the Marshall Islands.

5. On December 11, 2007, Plaintiff filed a Verified Complaint against Defendant Golden Fleece seeking security in the amount of $380,000.00. It further obtained an attachment order against Golden Fleece on or about December 28, 2008 in this amount which it has been serving on banks in New York.

6. Pursuant to the Ex Parte Order of Attachment and Garnishment dated on or about December 28, 2007 which authorized the attachment of property belonging to Defendant Golden Fleece in an amount up to $380,000.00, Citibank restrained three electronic funds transfers in the amounts of $101,048.48, $271,600.87 and $7,350.65. on or about January 18, 2008, January 30, 2008, and March 17, 2008 respectively.

7. All three of these EFTs were being sent by non-party, Indian Oil Corporation, to pay for charter hire in reference to the M/T ELLI and are the sole and exclusive property of Blanca as Blanca had been assigned all rights to the charter hire for the M/T ELLI as of December 15, 2007.

8. Defendant Golden Fleece did not, (and does not) have a property interest in those wires.

9. At all material times <u>Golden Fleece never had an attachable property interest in the funds attached</u> as Golden Fleece had previously irrevocably assigned all rights to hire to Blanca.

10. Pursuant to a charter party dated December 8, 2006, Defendant Golden Fleece chartered the M/T "ELLI" to non-party Indian Oil Corporation for the carriage of cargo.

11. Under the Golden Fleece-Indian Oil charter party, Indian Oil paid hire to Golden Fleece at regular intervals.

12. Subsequently, pursuant to a Memorandum and Agreement ("MOA") and side letter dated October 26, 2007, Defendant Golden Fleece (Sellers) agreed to sell the motor tanker "ELLI" to Blanca (Buyers) and assigned all future earnings of the ship under existing contracts/charter parties to Blanca. *See MOA and Side Letter annexed hereto as Exhibits "1" and "2" respectively.*

13. The Side Letter expressly provides that "it is hereby agreed that after December 15th 2007 00:01 local time, Buyers shall be entitled absolutely to all payments of hire made to or to be made by charterers and all such payments shall be the absolute property of the Buyers and shall be held by the Sellers on behalf of the Buyers. The Sellers shall promptly account to the Buyers thereof in full and without deduction or set-off." *See Clause 1, Exhibit "2."*

14. Mr. Marios Illiopoulous conducted and was directly involved in the negotiations on behalf of Blanca (Buyers) with the assistance of Blanca's legal counsel, Mr. Vangelis Bairacatris of G.E. Bairactaris & Partners.

15. In furtherance thereof, Mr. Marios Illiopoulous had discussions with Mr. Illias Papaeliou and Mr. Dimitri Papadimitriou acting on behalf of the Defendant Golden Fleece (Sellers).

16. Negotiations were conducted over the telephone and in meetings. They started on or about October 10, 2007, with the MOA and side agreement ultimately being executed on October 26, 2007.

17. The MOA states that delivery was to take place on "January 17, 2008 up to end of current charter with Indian Oil Corporation dated December 8, 2006 as currently extended in Sellers' option..."

18. Payment of the purchase price was to be made in full on delivery of the Vessel.

19. However, as set forth above, the Side Letter mandated that after December 15, 2007, the Buyers, Blanca, would be entitled to all payments of hire made by Charterers (Indian Oil Corporation) and the Vessel would, in effect be deemed to be delivered to the Buyers, although physical delivery and the closing would not take place until the end of the charter with Indian Oil.

20. The agreement was structured this way so as to avoid complications with the charterer, Indian Oil Corporation, who is controlled by the Indian Government.

21. However, why the transaction was structured in the way it was is irrelevant. The only relevant facts are that Golden Fleece and Blanca entered into an agreement which irrevocably assigned all hire for the ELLI to Blanca and that the wire transfers restrained were for charter hire of the ELLI.

22. The closing and delivery of the ELLI took place on March 17, 2008.

23. Blanca is a wholly separate entity from Golden Fleece and the MOA and side agreement were entered into at arms length and in good faith.

24. Furthermore, the dispute involved in Plaintiff's lawsuit against Golden Fleece refers to a previous charter of the M/T ELLI under a charter party dated May 30, 2003. Blanca has nothing to do whatsoever with this charter.

25.	Thus, Plaintiff's attachment of the wire transfers in the amounts of $101,048.48, $271,600.87 and $7,350.65 at Citibank N.A., representing charter hire payments for the M/T ELLI, was improper as those funds had been previously assigned to Blanca.

I declare under penalty of perjury and the laws of the United States of America that the foregoing is true and correct.

Dated: Southport, CT
    July 3, 2008

_____
Nancy R. Peterson

# EXHIBIT "1"

# MEMORANDUM OF AGREEMENT

Dated: October 26th, 2007

> Norwegian Shipbroker Association's Memorandum of Agreement for sale and purchase of ships. Adopted by The Baltic and International Maritime Council (BIMCO) in 1956.
> Code-name
> **SALEFORM 1993**
> Revised 1966, 1983 and 1986/87.

| | |
|---|---:|
| GOLDEN FLEECE MARITIME INC, of Liberia, owners of M/T "Elli" | 1 |
| hereinafter called the Sellers, have agreed to sell, and - | |
| BLANCA SHIPMANAGEMENT COMPANY of Marshall Islands or another company TBN | 2 |
| hereinafter called the Buyers, have agreed to buy | |
| | 3 |
| Name: M/T " ELLI" | |
| | 4 |
| Classification Society/Class: LR | 5 |
| Built:    1986            By: SAMSUNG | |
| | 6 |
| Flag:     Liberian-       Place of registration: Monrovia | |
| | 7 |
| Call Sign:     ELTW2      Grt/Nrt: 54880/29150 | |
| | 8 |
| Register Number: 10613 | |
| | 9 |
| hereinafter called the Vessel, on the following terms and conditions: | 10 |
| Definition | 11 |
| | 12 |
| "Banking days" are days on which banks are open both in the country of the currency stipulated for the Purchase Price in Clause 1 and in the place of closing stipulated in Clause 8. | 13 |
| | 14 |
| "In writing" or "written" means a letter handed over from the Sellers to the Buyers or vice versa, a registered letter, telex, telefax or other modern form of written communication. | 15 |
| "Classification Society" or "Class" means the Society referred to in line 4. | |
| | 16 |
| 1.  Purchase price U.S 25,000,000 (United States Dollars Twenty five million )cash on delivery | |
| | 17 |
| 2.  Deposit | |
| | 18 |
| As security for the correct fulfilment of this Agreement the Buyers shall pay to Liquimar Tanker Management Inc. on behalf of Sellers, a deposit of 10% (ten per cent)of the Purchase Price as follows: (A) USD 1,000,000 (United States Dollars One Million) within 3 banking days from the date of this Agreement.(B) USD 1,500,000 (United States Dollars One Million Five Hundred Thousand) latest by 27th December 2007 | 19 20 21 22 |
| ~~and held by them in a joint account for the Sellers and the Buyers, to be released in accordance with joint written instructions of the Sellers and the Buyers. Interest, if any, to be credited to the Buyers. Any fee charged for holding the said deposit shall be borne equally by the Sellers and the Buyers.~~ | 23 24 25 |
| 3.  Payment | 26 |
| The balance of the said  Purchase Price shall be paid in full free of bank charges to Sellers A/C with ALPHA BANK  IBAN GR 07014096009600015006013213, BIC CRBAGRAA. | 27 28 29 |
| on delivery of vessel, but not later than 3 banking days after the Vessel is in every respect physically ready for delivery in accordance with the terms and conditions of this Agreement and Notice of Readiness has been given in accordance with clause 5. | |



4.   Inspections                                                                                             30

a)*  The Buyers have inspected and accepted the Vessel's classification records. The Buyers have             31
     also inspected the Vessel at/in Haldia on 25th / 26th September 2007 and have accepted the              32
     Vessel following this inspection and the sale is outright and definite, subject only to the terms       33
     and conditions of this Agreement.                                                                       34

b)*  ~~The Buyers shall have the right to inspect the Vessel's classification records and declare~~          35
     ~~whether same are accepted or not within~~                                                             36

     ~~The Seller shall provide for inspection of the Vessel at/in~~                                         37

     ~~The Buyers shall undertake the inspection without undue delay to the Vessel. Should the~~             38
     ~~Buyers cause undue delay they shall compensate the Sellers for the losses thereby incurred.~~         39
     ~~The Buyers shall inspect the Vessel without opening up and without cost to the Sellers.~~             40
     ~~During the inspection, the Vessel's deck and engine log books shall be made available for~~           41
     ~~examination by the Buyers. If the Vessel is accepted after such inspection, the sale shall~~          42
     ~~become outright and definite, subject only to the terms and conditions of this Agreement,~~           43
     ~~provided the Sellers receive written notice of acceptance from the Buyers within 72 hours~~           44
     ~~after completion of such inspection.~~                                                                45
     ~~Should notice of acceptance of the Vessel's classification records and of the Vessel not be~~         46
     ~~received by the Sellers as aforesaid, the deposit together with interest earned shall be~~            47
     ~~released immediately to the Buyers, whereafter this Agreement shall be null and void.~~               48

*    ~~4a) and 4b) are alternatives; delete whichever is not applicable. In the absence of deletions,~~      49
     ~~alternative 4a) to apply.~~                                                                           50


5.   Notice, time and place of delivery                                                                      51

a)   The Sellers shall keep the Buyers well informed of the Vessel's itinerary and shall                     52
     provide the Buyers with 10,5,3 and 1 days notice of the estimated time of arrival at the intended       53
     place of ~~drydocking/underwater inspection~~/delivery subject to the provisions of 5c of this          54
     MOA. When the Vessel is at the place of delivery and in every respect physically ready for              55
     delivery in accordance with this Agreement, the Sellers shall give the Buyers a written Notice of       56
     Readiness for delivery.

b)                                                                                                           57
     The Vessel shall be delivered and taken over safely afloat at a safe and accessible berth or            58
     anchorage at/~~in~~ worldwide.
                                                                                                             59
     in the Sellers' option.
                                                                                                             60
     Expected time of delivery: January 17th, 2008 up to end of current charter with Indian Oil
     Corporation dated December 8th, 2006 as currently extended, in Sellers' option, plus                    61
     reasonable steaming to reach a convenient delivery port.
c)                                                                                                           62
     Date of cancelling ~~(see clauses 5 c),6 b) (iii)and 14)~~: 30 days after vessel's redelivery from      63
     charterers.                                                                                             64
                                                                                                             65
     In the event that sellers cannot meet the cancelling date due to average damage to the                  66
     vessel affecting class, buyers have the option to either take delivery of the vessel as is              67
     where is or buyers shall extend the cancelling date until the vessel's class is reinstated.             68
                                                                                                             69
                                                                                                             70
d)   ~~If the Sellers anticipate that, notwithstanding the exercise of due diligence by them, the~~          71
     ~~Vessel will not be ready for delivery by the cancelling date, they may notify the Buyers in~~
     ~~writing stating the date when they anticipate that the Vessel will be ready for delivery and~~        72
     ~~propose a new cancelling date. Upon receipt of such notification the Buyers shall have the~~          73
     ~~option of either cancelling this Agreement in accordance with Clause 14 within 7 running~~            74
     ~~days of receipt of the notice or of accepting the new date as the new cancelling date. If the~~       75
     ~~Buyers have not declared their option within 7 running days of receipt of the Sellers'~~

~~notification or if the Buyers accept the new date, the date proposed in the Sellers' notification~~ 76
~~shall be deemed to be the new cancelling date and shall be substituted for the cancelling date~~
~~stipulated in line 61.~~

~~If this Agreement is maintained with the new cancelling date all other terms and conditions~~
~~hereof including those contained in Clauses 5 a) and 5 c) shall remain unaltered and in full~~
~~force and effect. Cancellation or failure to cancel shall be entirely without prejudice to any~~
~~claim for damages the Buyers may have under Clause 14 for the Vessel not being ready by~~
~~the original cancelling date.~~

~~Should the Vessel become an actual, constructive or compromised total loss before delivery~~ 77
~~the deposit together with interest earned shall be released immediately to the Buyers~~ 78
~~whereafter this Agreement shall be null and void.~~ 79

6.  Drydocking/Divers Inspection                                                                 80

a)**  ~~The Sellers shall place the Vessel in drydock at the port of delivery for inspection by the~~ 81
       ~~Classification Society of the Vessel's underwater parts below the deepest load line, the~~ 82
       ~~extent of the inspection being in accordance with Classification Society's rules. If the~~ 83
       ~~rudder, propeller, bottom or other underwater parts below the deepest load line are found~~ 84
       ~~broken, damaged or defective so as to affect the Vessel's class, such defects shall be made~~ 85
       ~~good at the Sellers' expense to the satisfaction of the Classification Society without~~ 86
       ~~condition/recommendation*.~~ 87

b)**  (i)   The Vessel is to be delivered without drydocking. However, the Buyers shall     88
       have the right at their expense to arrange for an underwater inspection by a diver approved 89
       by the Classification society prior to the delivery of the Vessel. The Sellers shall at their 90
       cost make the Vessel available for such inspection. The extent of the inspection and the 91
       conditions under which it is performed shall be to the satisfaction of the Classification 92
       Society. If the conditions at the port of delivery are unsuitable for such inspection, the 93
       Sellers shall make the Vessel available at a suitable alternative place near to the delivery 94
       port.                                                                                    95

      (ii)  If the rudder, propeller, bottom or other underwater parts below the deepest load line 96
       are found broken, damaged or defective so as to effect the Vessel's class, then unless 97
       repairs can be carried out afloat to the satisfaction of the Classification society, the Sellers 98
       shall arrange for the Vessel to be drydocked at their expense for inspection by the 99
       Classification society of the Vessel's underwater parts below the deepest load line, the 100
       extent of the inspection being in accordance with the Classification Society's rules. If the 101
       rudder, propeller, bottom or other underwater parts below the deepest load line are found 102
       broken, damaged or defective so as to effect the Vessel's class, such defects shall be made 103
       good by the Sellers at their expense to the satisfaction of the classification society 104
       without condition/recommendation*. In such event the Sellers are to pay also for the cost of 105
       the underwater inspection and the Classification Society's attendance.                  106

      (iii) If the Vessel is to be drydocked pursuant to Clause 6 b) (ii) and no suitable dry- 107
       docking facilities are available at the port of delivery, the Sellers shall take the Vessel 108
       to a port where suitable drydocking facilities are available ,whether within or outside the 109
       delivery range as per Clause 5 b). Once drydocking has taken place the Sellers shall deliver 110
       the Vessel at a port within the delivery range as per clause 5 b) which shall, for the 111
       purpose of this clause, become the new port of delivery. In such event the cancelling date 112
       provided for in clause 5 b) shall be extended by the additional time required for the 113
       dry-docking and extra steaming, but limited to a maximum of 14 running days.           114

c)    If the vessel is drydocked pursuant to Clause 6 a) or 6 b) above                         115

      (i)   the Classification Society may require survey of the tailshaft system, the extent of 116
       the survey being to the satisfaction of the Classification surveyor. If such survey is not 117
       required by the Classification Society, the Buyers shall have the right to require the tailshaft 118
       to be drawn and surveyed by Classification Society, the extent of the survey being in 119

accordance with the Classification Society's rules for tailshaft survey and consistent with  120
the current stage of the Vessel survey cycle. The Buyers shall declare whether they  121
require the tailshaft to be drawn and surveyed not later than by the completion of the  122
inspection of the Classification Society. The drawing and refitting of the tailshaft shall be  123
arranged by the Sellers. Should any parts of the tailshaft system be condemned or found  124
defective so as to effect the Vessel's class, those parts shall be renewed or made good at  125
the Sellers' expense to the satisfaction of the Classification Society without  126
condition/recommendation*.  127

(ii)     the expenses relating to the survey of the tailshaft system shall be borne  128
by the Buyers unless the Classification Society requires such survey to be carried out , in  129
which case the Sellers shall pay these expenses. The Sellers shall also pay the expenses  130
if the Buyers require the survey and parts of the system are condemned or found defective  131
or broken so as to effect the vessel's class*.  132

(iii)    the expenses in connection with putting the Vessel in and taking her out  133
of drydock, including the drydock dues and the Classification Society's fees shall be paid by  134
the Sellers if the Classification Society issues any condition/recommendation* as a result  135
of the survey or if it requires survey of the tailshaft system. In all other cases the Buyers  136
shall pay the aforesaid expenses, dues and fees.  137

(iv)    the Buyers' representative shall have the right to be present in the drydock, but  138
without interfering with the work or decisions of the Classification surveyor.  139

(v)     the Buyers shall have the right to have the underwater parts of the Vessel  140
cleaned and painted at their risk and expense without interfering with the Sellers' or the  141
Classifications surveyor's work, if any, and without affecting the Vessel's timely delivery. If,  142
however, the Buyers' work in drydock is still in progress when the Sellers have  143
completed the work which the Sellers are required to do, the additional docking time  144
needed to complete the Buyers' work shall be for the Buyers' risk and expense. In the event  145
that the Buyers' work requires such additional time, the Sellers may upon completion of the  146
Sellers' work tender Notice of Readiness for delivery whilst the Vessel is still in drydock  147
and the Buyers shall be obliged to take delivery in accordance with Clause 3 , whether  148
the vessel is in drydock or not and irrespective of Clause 5 b).  149

*     Notes, if any, in the surveyor's report which are accepted by the classification Society  150
without condition/recommendation are not to be taken into account.  151

**   6a) and 6 b) are alternatives; delete whichever is not applicable. In the absence of deletions,  152
alternative 6 a) to apply.  153

7.    Spares/bunkers, etc.  154

The Sellers shall deliver the Vessel to the Buyers with everything belonging to her on board and on shore.  155
All spare parts and spare equipment including spare tail-end shaft(s) and/or spare propeller(s)/propeller  156
blade(s), if any, belonging to the Vessel at the time of inspection used or  157
unused, whether on board or not shall become the Buyers' property, but spares on order are to be  158
excluded. Forwarding charges, if any, shall be for the Buyers' account. The Sellers are not required to  159
replace spare parts including spare tail-end shaft(s) and spare propeller(s)/propeller blade(s) which  160
are taken out of spare and used as replacement prior to delivery, but the replaced items shall be the  161
property of the Buyers. The radio installation and navigational equipment shall be included in the sale  162
without extra payment if they are the property of the Sellers. Unused stores and provisions shall be  163
included in the sale and be taken over by the Buyers without extra payment.  164

The Sellers have the right to take ashore crockery, plates, cutlery, linen and other articles bearing the  165
Seller's flag or name, provided they replace same with similar unmarked items. Library, forms, etc.,  166
exclusively for use in the Sellers' vessel(s), shall be excluded without compensation. Captain's  167
Officers' and Crew's personal belongings including the slop chest are to be excluded from the sale,  168
as well as the following additional items (including items on hire):  169



The Buyers shall take over the remaining bunkers and ~~unused~~ all lubricating oils onboard ~~including in storage~~ ~~tanks and sealed drums~~ and pay the Sellers last net purchase price supported by copied vouchers or redelivery prices charged by charterers.~~the current net marked price (excluding barging expenses) at the~~ ~~port~~ ~~and~~ ~~date of delivery of the Vessel.~~
Payment under this Clause shall be made at the same time and place and in the same currency as the Purchase Price.

8.   Documentation. (see also clause 17)

The place of closing : In Sellers designated bank or Offices, Athens or Piraeus.

~~In exchange for payment of the Purchase Price the Sellers shall furnish the Buyers with delivery documents, namely:~~

~~a) Legal Bill of Sale in a form recordable in _____ (the country in which the Buyers are to register the Vessel), warranting that the Vessel is free from all encumbrances, mortgages and maritime liens or any other debts or claims whatsoever, duly notarially attested and legalized by the consul of such country or other competent authority.~~

~~b) Current Certificate of Ownership issued by the competent authorities of the flag state of the Vessel.~~

~~c) Confirmation of Class issued within 72 hours prior to delivery.~~

~~d) Current Certificate issued by the competent authorities stating that the Vessel is free from register encumbrances.~~

~~e) Certificate of deletion of the Vessel from the Vessel's registry or other official evidence of deletion appropriate to the Vessel's registry at the time of delivery, or, in the event that the registry does not as a matter of practice issue such documentation immediately, a written undertaking by the Sellers to effect deletion from the Vessel's registry forthwith and furnish a Certificate or other official evidence of deletion to the Buyers promptly and latest within 4 (four) weeks after the purchase Price has been paid and the Vessel has been delivered.~~

~~f) Any such additional documents as may reasonably be required by the competent authorities for the purpose of registering the Vessel provided the Buyers notify the Sellers of any such documents as soon as possible after the date of this Agreement.~~

At the time of delivery the Buyers and Sellers shall sign and deliver to each other a Protocol of Delivery and Acceptance confirming the date and time of delivery of the Vessel from the Sellers to the Buyers.

At the time of delivery the Sellers shall hand to the Buyers or their Managers the classification certificate(s) as well as all plans etc., which are on board the Vessel. Other certificates which are on board the Vessel shall also be handed over to the Buyers unless the Sellers are required to retain same, in which case the Buyers to have the right to take copies. Other technical documentation which may be in the Sellers' possession shall be promptly forwarded to the Buyers at Buyers expense, if they so request. The Sellers may keep the Vessel's log books but the Buyers to have the right to take copies of same.

9. Encumbrances

The Sellers warrant that the Vessel, at the time of delivery, is free from all charters, encumbrances, mortgages and maritime liens or any other debts whatsoever. The Sellers hereby undertake to indemnify the Buyers against all consequences of claims made against the Vessel which have been incurred prior to the time of delivery.



10. Taxes, etc.                                                                                                              212

Any taxes, fees and expenses in connection with the purchase and registration under the Buyers' flag         213
shall be for the Buyers account, where as similar charges in connection with the closing of the Sellers'    214
register shall be for the Sellers' account.                                                                  215

11. Condition on delivery                                                                                    216

The vessel shall be delivered to buyers with or without cargo, charter free or charter                       217
Attached (see clause 5) in Sellers' option.                                                                  218
                                                                                                             219
The Vessel with everything belonging to her shall be at the Sellers' risk and expense until she is           220
delivered to the Buyers, but subject to the terms and conditions of this Agreements she shall be             221
delivered and taken over as- is where is at the time of delivery with her Class maintained free of           222
recommendations and average damage. she was at the time of inspection, fair wear and tear excepted.          223
However, the Vessel shall be delivered with her class maintained without condition/recommendation*,          224
free of average damage affecting the Vessel's class, and with her classification certificates and            225
national certificates, as well as all other certificates the Vessel had at the time of inspection, valid and 226
unextended without condition/recommendation* by Class or relevant authorities at the time of                 227
delivery.
"Inspection" in this Clause 11, shall mean the Buyers' inspection according to Clause 4 a) or 4 b), if       228
applicable, or the buyers inspection prior to the signing of this Agreement. If the Vessel is taken over    229
without inspection, the date of this Agreement shall be the relevant date.

*   Notes, if any, in the surveyor's reports which are accepted by the Classification Society
    without condition/recommendation are not to be taken into account.                                       230

                                                                                                             231

12. Name/markings

Upon delivery the Buyers undertake to change the name of the Vessel and alter funnel markings.               232

                                                                                                             233
                                                                                                             234
13. Buyers' default                                                                                          235
                                                                                                             236
Should the deposit not be paid in accordance with Clause 2, the Sellers have the right to cancel this        237
Agreement, and they shall be entitled to claim compensation for their losses and for all expenses            238
incurred together with interest.                                                                             239
Should the Purchase Price not be paid in accordance with Clause 3, the Sellers have the right to
cancel the Agreement, in which case the deposit together with interest earned shall be released to the
Sellers. If the deposit does not cover their loss , the Sellers shall be entitled to claim further
compensation for their losses and for all expenses incurred together with interest.                          240

                                                                                                             241
                                                                                                             242
14. Sellers' default                                                                                         243
                                                                                                             244
Should the Sellers fail to give Notice of Readiness in accordance with Clause 5 a) or fail to be ready       245
to validly complete a legal transfer by the date stipulated in line 61 the Buyers shall have                 246
the option of cancelling this Agreement provided always that the Sellers shall be granted a                  247
maximum of 3 banking days after Notice of Readiness has been given to make arrangements                      248
for the documentation set out in Clause 8. If after Notice of Readiness has been given but before            249
the Buyers have taken delivery, the Vessel ceases to be physically ready for delivery and is not             250
made physically ready again in every respect by the date stipulated in line 61 and new Notice of             251
Readiness given, the Buyers shall retain their option to cancel. In the event that the Buyers elect          252
to cancel this Agreement the deposit together with interest earned shall be released to them                 253
immediately.                                                                                                 254
Should the Sellers fail to give Notice of Readiness by the date stipulated in line 61 or fail to be ready
to validly complete a legal transfer as aforesaid they shall make due compensation to the Buyers for
their loss and for all expenses together with interest if their failure is due to proven
negligence and whether or not the Buyers cancel this Agreement.                                              255

**15. Buyers' representatives**

After this Agreement has been signed by both parties and ~~the deposit has been lodged,~~ the Buyers have the right to place two representatives on board the Vessel at their sole risk and expense ~~upon arrival at on or about~~

These representatives are on board for the purpose of familiarisation and in the capacity of observers only, and they shall not interfere in any respect with the operation of the Vessel. The Buyers' representatives shall sign the Sellers' letter of indemnity prior to their embarkation.

**16. Arbitration**

a)* This Agreement shall be governed by and construed in accordance with English law and any dispute arising out of this Agreement shall be referred to arbitration in London in accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or re-enactment thereof for the time being in force, one arbitrator being appointed by each party. On the receipt by one party of the nomination in writing of the other party's arbitrator, that party shall appoint their arbitrator within fourteen days, failing which the decision of the single arbitrator appointed shall apply. If two arbitrators properly appointed shall not agree they shall appoint an umpire whose decision shall be final.

b)* ~~This Agreement shall be governed by and construed in accordance with Title 9 of the United States Code and the Law of the State of New York and should any dispute arise out of this Agreement, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for purpose of enforcing any award, this Agreement may be made a rule of the Court.~~
~~The proceedings shall be conducted in accordance with the rules of the Society of Maritime Arbitrators Inc. New York.~~

c)* ~~Any dispute arising out of this Agreement shall be referred to arbitration at _____, subject to the procedures applicable there.~~
~~The laws of _____ shall govern this Agreement.~~

~~16a), 16b) and 16c) are alternatives; delete whichever is not applicable. In the absence of deletions, alternative 16 a) to apply.~~

Additional clauses 17-19 inclusive herebelow form an integral part of this Agreement and shall be deemed to be fully incorporated herein.

**17. Documentation:** Sellers will provide Buyers with all documents reasonably required for the purpose of the vessel's legal transfer of ownership and her registration under the Liberian Flag. List of such documents to be agreed and to be incorporated in this MOA by an Addendum.

**18.** This sale to be kept strictly private and confidential.

**19.** The present agreement between sellers and buyers is absolute and irrevocable and can not be abandoned by either party.

The Sellers                                          The Buyers

[Sellers' stamp: FLEECE MARITIME INC, MONROVIA, LIBERIA, with signature]          [Buyers' signature]

# EXHIBIT "2"

### SIDE LETTER "A" TO THE MEMORANDUM OF AGREEMENT DATED 26th OCTOBER 2007 FOR THE SALE OF M/T "ELLI" ("MOA")

Pursuant to the terms and conditions of the aforementioned MOA between:

**Golden Fleece Maritime Inc of Liberia** (Sellers) and **Blanca Shipmanagement Company of Marshall Islands or another company TBN** (Buyers) it is further agreed between Sellers and Buyers that:

1. It is hereby agreed that after December 15th 2007 00:01 local time, Buyers shall be entitled absolutely to all payments of hire made to or to be made by charterers and all such payments shall be the absolute property of the Buyers and shall be held by the Sellers on behalf of the Buyers. The Sellers shall promptly account to the Buyers thereof in full and without deduction or set-off.
2. In the event that the vessel is delivered in the end of the time charter with IOC dated 8th December 2006 as extended or later to reach a convenient delivery port in accordance with clause 5b of the MOA, the Buyers shall pay to the Sellers without set-off or deduction upon receipt of a written request to do so, accompanied by copies of supporting documentation, such sum as represents the vessel's OPEX for the period between 15th December 2007 00:01 and the delivery date. Such OPEX currently is estimated to be in the region of USD 8,000 per day.
3. Further, it is hereby agreed that after December 15th 2007 00:01 local time, Buyers are liable for all claims/losses and damage to the vessel. Should the vessel become an actual, constructive or compromised total loss after 15th December 2007 00.01 hrs and before the vessel's delivery to Buyers, the Buyers shall only be entitled to receive the 50% of any compensation from Hull and Machinery Policy and Increased Value Policy less the purchase price less any expenses incurred.
4. Clause 9 of the MOA to which this side letter applies, ceases to be warranted by Sellers and becomes totally the responsibility of Buyers, after 00.01 of the 15th December 2007. Similarly clause 11 of the said MOA lines 218 and 219. The only exception to this clause is if the cause of the problem arises before 00.01 15th December 2007, in which case Sellers are responsible.
5. Buyers irrevocably and unconditionally accept and warrant that after the delivery the vessel shall continue to be managed by LIQUIMAR TANKERS MANAGEMENT INC (having an office at 3, Alopekis street, Kolonaki, Athens, Greece). Any change regarding the vessel's management shall be decided by shareholders representing 100% of owners' shares. The terms and conditions of the Management Agreement shall be agreed between the Buyers and Liquimar Tankers Management Inc (Liquimar) by a separate Agreement but with terms similar to those that sellers currently have with Liquimar with only reasonable amendments to confront with the new realities of the Tanker Management Industry, if any. The management fee is agreed to be USD 550 per day for the first year and increased annually thereafter by 5%.
6. From December 15th 2007, for any unpaid amount of the purchase price the Buyer shall be debited for the balance of the purchase price at a rate of Libor of the period till delivery plus 1% per annum pro rata which will be settled at delivery.

Signed this 26th day of October 2007

For the Sellers                                    For the Buyers

