UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ST SHIPPING AND TRANSPORT, INC.,  :
        Plaintiff,  :
        - against -  :   07 Civ. 11147 (SAS)
        :   ECF CASE
GOLDEN FLEECE MARITIME INC.,  :
        Defendant.  :
BLANCA SHIPMANAGEMENT COMPANY,  :
        Third-Party Claimant,  :
------------------------------------------------------------X

## DECLARATION OF DUNCAN MCDONALD
## IN SUPPORT OF MOTION TO VACATE

DUNCAN MCDONALD affirms and states the following under the penalties of perjury under the laws of the United States pursuant to 28 USC 1746:

1.    I am a solicitor of the Supreme Court of England and Wales and a partner in the law firm of Stephenson Harwood. I have over twenty-five years of experience as a solicitor, practising principally in the field of shipping law.

**A.**    **Purpose of Opinion**

2.    I am asked to give an opinion on the effect under English law of an MOA entered into on 26 October 2007 for the sale of the M/T ELLI by Golden Fleece Maritime Inc ("the Sellers") to Blanca Shipmanagement Company or another company to be nominated ("the Buyers") ("the MOA") and a Side Letter ("the Side Letter"), which was also dated 26 October 2007.

\LONLIVE\6775145.2

**B.    The MOA and Side Letter**

3.    Under the MOA, the expected time of delivery was *"January 17 2008 up to end of current charter with Indian Oil Corporation dated December 8th 2006 as currently extended, in Sellers' option, plus reasonable steaming to reach a convenient delivery port."* (Clause 5(b))

4.    Clause 11 provides: *"The vessel shall be delivered to buyers with or without cargo, charter free or charter attached (see clause 5) in Sellers' option."*

5.    The Side Letter of 26 October 2007 between the Sellers and the Buyers provides that:

QUOTE

*1. It is hereby further agreed that after December 15th 2007 00:01 local time, Buyers shall be entitled absolutely to all payments of hire made to or to be made by charterers and all such payments shall be the absolute property of the Buyers and shall be held by the Sellers on behalf of the Buyers. The Sellers shall promptly account to the Buyers thereof in full and without deduction or set-off.*

*2. In the event that the vessel is delivered in the end of the time charter with IOC dated 8th December 2006 as extended or later to reach a convenient delivery port in accordance with clause 5b of the MOA, the Buyers shall pay to the Sellers without set-off or deduction upon receipt of a written request to do so, accompanied by copies of supporting documentation, such sum as represents the vessel's OPEX for the period between 15th December 2007 00:01 and the delivery date. Such OPEX currently is estimated to be in the region of USD 8,000 per day.*

UNQUOTE

6.    The effect of clauses 5(b) and 11 of the MOA is that Sellers are entitled (at their option) to deliver the vessel to Buyers subject to the charter with Indian Oil Corporation ("IOC"). I understand that, in the event, such option was not pursued by the Sellers. Accordingly, the Buyers became unconditionally entitled to hire paid by the charterers, and Buyers became entitled to payment of the vessel's OPEX up until delivery took place. (Clause 1 refers to *"all payments of hire made to or to be made by charterers"*. (The reference to

payments *"to"* charterers is clearly an error, as Buyers can have no rights over such payments.).

7. Clause 1 provides that Buyers will be *"entitled absolutely"* to all charterparty hire, which will be *"the absolute property"* of the Buyers, and will be *"held by the Sellers on behalf of the Buyers"*. Further, the Sellers are to *"promptly account to the Buyers"* for it. In my opinion, under English law, this wording makes it clear that the Sellers will hold all hire payments made by the charterers on trust for the Buyers. In particular, I do not consider that there is any requirement that OPEX be *"netted off"*, and the balance paid to the Buyers. The obligation upon the Sellers to account to the Buyers for hire received in my opinion is <u>*unqualified*</u>.

8. Under English law, no particular wording is required to create a trust. Wherever the intention to create a trust is apparent, it will be given effect. Provided that the following can be ascertained with reasonable certainty:

   (i) an intention to create a trust, involving trust property being intended to be kept separate from other property of the trustee;

   (ii) the identity of the trust property;

   (iii) the person intended to be the beneficiary; and

   (iv) the purpose of the trust,

   then English law will give effect to the trust.

   See Underhill and Hayton on Trusts (17th edition) p. 97-99, copy attached.

   I consider that all four of the above requirements can be established from the wording of the Side Letter and that accordingly a trust was established.

9. The fact that the hire will pass through the Sellers' bank account before being paid to Buyers does not alter the fact that it is held on trust; such money belongs in equity to the Buyers from the moment it is received by the Sellers (Underhill and Hayton on Trusts (17th edition) p. 101 – copy attached).

10. Trust property is entirely immune from claims by creditors of the trustees, because it is the beneficiaries, not the trustees, who have equitable, proprietary interests in the property

(Underhill and Hayton on Trusts (17th edition) p. 2 – see attached copies). The trustees have no such interest in the property – they hold the property exclusively on behalf of the beneficiaries and have no personal interest in or entitlement thereto.

I declare under penalty of perjury and the laws of the United States of America that the foregoing is true and correct.

Executed in London on 3rd July 2008.

*[signature]*

_____

**DUNCAN MCDONALD**

# Underhill and Hayton
## Law Relating to Trusts and Trustees

Seventeenth Edition

General Editor
**David Hayton**
*LLB, LLD (Newcastle), MA, LLD (Cantab)*
*Justice of the Caribbean Court of Justice, Additional Bencher of Lincoln's Inn and Fellow of King's College, London*

with
**Paul Matthews**
*BCL (Oxon), LLB, LLD (London)*
*Professor of Law, King's College, London, Solicitor of Withers London, and HM Coroner City of London*

**Charles Mitchell**
*BA (Oxon), LLM, PhD (London)*
*Professor of Law, King's College, London*



LexisNexis® Butterworths

Chapter 1

# PRELIMINARY TERMINOLOGY

ARTICLE 1
TERMINOLOGY OF TRUST, TRUSTEE, TRUST FUND, TRUST PROPERTY, BREACH OF TRUST, BENEFICIARY, SETTLOR, EQUITABLE INTEREST AND BENEFICIAL INTEREST

1.1

(1) A trust is an equitable obligation, binding a person (called a trustee) to deal with property (called trust property) owned by him as a separate fund, distinct from his own private property, for the benefit of persons (called beneficiaries or, in old cases, *cestuis que trust*), of whom he may himself be one[1], and any one of whom may enforce the obligation[2].

(2) Trust property within the separate fund is immune from claims of the trustee's private creditors because the beneficiaries have equitable proprietary interests in such property. The trust fund comprises not just the trust property originally owned by the trustee as trustee and all the fruits from time to time thereof (eg interest payments, rents, dividends from shares or bonus issues of shares), but also *authorised* substituted property subsequently acquired by the trustee on behalf of the trust. Indeed, if the beneficiaries so require, the trust fund comprises *unauthorised* substituted property purportedly acquired by the trustee on behalf of the trust, and any property purportedly acquired by the trustee *for himself* from his sale or exchange of trust property or from his misuse of his position as trustee (eg secret commissions or bribes)[3].

(3) It is the trustee who sues third parties or is sued by third parties in relation to the trust property, the trust, unlike a company, having no legal personality. Any act or neglect on the part of a trustee which is not authorised or excused by the terms of the trust instrument, or by law, is called a breach of trust[4]. The

2

Chapter 3

# MATTERS ESSENTIAL TO THE PRIMA FACIE VALIDITY OF AN EXPRESS TRUST

*Article*

8   Language sufficient to create a trust for persons 8.1
9   The constitution of trusts 9.1
10  What property is capable of being made the subject of a trust 10.1
11  The legality of the expressed object of the trust 11.1
12  Necessity or otherwise of writing and signature 12.1

ARTICLE 8
LANGUAGE SUFFICIENT TO CREATE A TRUST FOR PERSONS

8.1

(1) No technical expressions are necessary for the creation of an express trust, which may be created without the settlor being aware of this[1], so long as he intends to create a state of affairs that can only be accomplished if he creates a trust[2]. It is sufficient if the settlor evinces with reasonable certainty:
  (a) an intent to create a trust, involving the trust property being intended to be kept separate from other property of the trustee[3];
  (b) the trust property[4];
  (c) the persons (individual or corporate) intended to be beneficiaries[5]; and
  (d) the purpose of the trust so that the trust is administratively workable and not capricious[6];
providing always that for there to be a valid, and therefore enforceable, trust the trust must be intended to be directly or indirectly for the benefit of persons (individual or corporate) so that some person has locus standi to enforce the trust[7] unless the trust is for charitable purposes, when enforceable by the Attorney General or the Charity Commission, or for a limited anomalous number of non-charitable purposes relating to the maintenance of animals, tombs and the performance of private religious rituals[8], although there is scope[9] for

97

**8.1** *Matters essential to the prima facie validity of an express trust*

the courts to uphold non-charitable purpose trusts if the settlor's trust instrument provides for a person with locus standi to enforce the purpose trust, assuming it to be workable and restricted to a valid perpetuity period.

(2) Whether an intention to create a trust is sufficiently evinced is in each case a question of interpretation. There is a well-established rule of construction that where an instrument is capable of two interpretations, one of which would give effect to the purpose of the person who drew it up, and the other of which would frustrate such purpose, one should prefer the former interpretation to the latter[10]. Whether or not[11] there is an intention to create a trust may be inferred from the context.

In particular:

(a) an apparent power of appointment among such of a class as the donee of the power may select, unaccompanied by a gift over in default of appointment[12], may raise an inference that a fixed trust was intended in favour of the class in default of appointment if there appears to be a general intention to benefit the objects of the power[13], alternatively, the apparent power may be treated as in the nature of a discretionary trust for the class members[14];

(b) a gift by will to a person, followed by precatory words expressive of the testator's request, recommendation, desire, hope or confidence, that the property will be applied in favour of others, may exceptionally create a trust, if, on the will as a whole, it appears that the testator intended the words to be imperative[15], but the court will not presume the imposition of a precatory trust merely from the presence of particular precatory words[16];

(c) a devise or bequest 'upon condition' or 'to the intent' that a benefit may be conferred on a third party, may create a trust for the third party if, on construing the whole will, the court comes to the conclusion that a trust, and not a charge merely, or a personal obligation, or a condition entailing forfeiture, was intended[17];

(d) a contract to create a trust of which specific performance would be ordered is considered to be an executory trust, conferring on parties who could sue for specific performance the same rights and imposing the same liabilities as if the contract had been actually performed[18].

(3) On the other hand, persons to whom payments are directed to be made by trustees are not necessarily beneficiaries, and cannot enforce such directions if the object of the payments, as gathered from the whole instrument, was not to confer benefits on the payees, but to facilitate the administration of an estate or to relieve the owner of trouble or inconvenience. In many cases the so-called trustee is regarded as an agent[19].

1   Paul v Constance [1977] 1 WLR 527, CA; Rowe v Prance [2000] WTLR 249; Dipple v Corles (1853) 11 Hare 183; Page v Cox (1852) 10 Hare 163; Moore v Darton (1851) 4 De G & Sm 517.
2   He is presumed to intend the legal consequences of his acts: Swiss Bank Corpn v Lloyds Bank Ltd [1982] AC 584 at 595–596.
3   Paragon Finance plc v Thakerar [1999] 1 All ER 400 at 416; Commissioners of Customs & Excise v Richmond Theatre Management [1995] STC 257.
4   Boyce v Boyce (1849) 16 Sim 476; Knight v Knight (1840) 3 Beav 148; affd sub nom Knight v Boughton (1844) 11 Cl & Fin 513 at 548, HL; and explained by CA in Re Oldfield [1904] 1 Ch 549, CA.
5   McPhail v Doulton [1971] AC 424; Re Wright's Will Trusts [1981] LS Gaz R 841.
6   R v District Auditor, ex p West Yorks CC [2001] WTLR 795.
7   Re Denley's Trust Deed [1969] 1 Ch 373.
8   See paras 8.173–8.184 below.
9   See paras 8.157–8.167 below.
10  Universe Tankships Inc of Monrovia v International Transport Workers' Federation [1983] 1 AC 366 at 406, [1982] 2 All ER 67 at 93; IRC v McMullen [1981] AC 1 at 14, [1980] 1 All ER 884 at 890, CA; Charles v Barzey [2002] UKPC 68, para 12 [2003] 1 WLR 437.
11  Re B (A Child: Property Transfer) [1999] EWCA Civ 1313, (1999) Times, 10 May, (divorce consent order transferring house to mother as to 70% 'for the benefit of the child, J', and 30% for the father, held by the Court of Appeal not to create a trust for J, so the mother could retain such percentage of proceeds of sale); Duggan v Governor of Sutton Prison [2004] EWCA Civ 78, [2004] 1 WLR 1010 (Governor did not hold prisoners' money on trust); Re Chelsea Cloisters Ltd (1981) 41 P & CR 98 (tenants' damage deposit moneys held on trust by landlord).
12  Burrough v Philcox (1840) 5 My & Cr 72; Grieveson v Kirsopp (1838) 2 Keen 653; Brown v Higgs (1799) 4 Ves 708.
13  Re Weekes' Settlement [1897] 1 Ch 289; Re Llewellyn's Settlement [1921] 2 Ch 281.
14  McPhail v Doulton [1971] AC 424.
15  Shelley v Shelley (1868) LR 6 Eq 540; Re Steele's Will Trusts [1948] Ch 603, [1948] 2 All ER 193.
16  Re Adams and Kensington Vestry (1884) 27 Ch D 394; Re Diggles (1888) 39 Ch D 253; Re Hamilton [1895] 1 Ch 373; on appeal [1895] 2 Ch 370, and cases there cited; Re Steele's Will Trusts [1948] Ch 603, [1948] 2 All ER 193; and Mussoorie Bank v Raynor (1882) 7 App Cas 321.
17  See paras 8.233–8.242 below.
18  Pullan v Koe [1913] 1 Ch 9; Collyer v Isaacs (1881) 19 Ch D 342 at 351.
19  See paras 8.252–8.255 below.

**Paragraph (1)**

*Reasons for the rule that technical language is unnecessary*

8.2   The latitude of expression allowed to the creator of a trust is an instance of the maxim that 'Equity regards the intention rather than the form'. Wherever the intent to create a trust is apparent, it will (other matters being in order) be carried into effect, however crudely or elliptically it may have been expressed.

*Express direction or declaration*

8.3   Of course, the words 'in trust for', or 'upon trust to', are the most proper for expressing a fiduciary purpose; but wherever a person vests property in another and shows an intention that it is to be applied for the benefit of third parties who are sufficiently pointed out, an express trust will be created,

'is not bound to keep the money separate, but is entitled to mix it with his own money and deal with it as he pleases, and when called upon to hand over an equivalent sum of money, then he is not a trustee of the money but merely a debtor.'[2]

1   See para 1.24 above and *Paragon Finance plc v Thakerar* [1999] 1 All ER 400 at 416, per Millett J; *Hinckley Singapore Trading Pte Ltd v Sogo Department Stores Pte Ltd* (2001) 4 ITELR 301 (Singapore CA); *Re English & American Insurance Co Ltd* [1994] 1 BCLC 649; *Re Fleet Disposal Services Ltd* [1995] 1 BCLC 345; *Guardian Ocean Cargoes Ltd v Banco da Brasil* [1994] 2 Lloyd's Rep 152, CA.
2   *Henry v Hammond* [1913] 2 KB 515 at 521, endorsed by CA in *R v Clowes (No 2)* [1994] 2 All ER 316 at 325 and applied in *Commissioners of Customs and Excise v Richmond Theatre Management* [1995] STC 257.

8.7 A requirement to keep moneys separate is an indicator that they are impressed with a trust: the absence of such a requirement, if there are no other indicators of a trust, normally negatives it. The fact that a transaction contemplates the mingling of funds is, therefore, not necessarily fatal to a trust, eg where investors' moneys are to be pooled for the purposes of buying a particular type of investment to be held on trust for them as equitable tenants in common[1]. Similarly, a valid trust exists where B contracts with C that after receiving full consideration from C, if he receives proceeds of sale materialising from some specified future property he will hold it (or a specified percentage or fractional part thereof[2]) on trust for C, though he can hold such money briefly in his own bank account before transmitting it on to C: such money belongs in Equity to C from the moment received by B so that C has the benefit of the tracing rules[3]. The contract should spell out that the relevant amount of money is to be transferred into C's account or a trust account for C within a short period of receipt (eg five working days) and that B should not let the amount credited in its general account receiving the proceeds of sale fall below the relevant amount to be held on trust for C[4].

1   *Re Goldcorp Exchange Ltd* [1995] 1 AC 74, [1994] 2 All ER 806, PC; *R v Clowes (No 2)* [1994] 2 All ER 316, CA.
2   See *Associated Alloys Pty Ltd v ACN 001 452 106 Pty Ltd* (2001) 74 ALJR 862, para 1.42 above.
3   *Associated Alloys Pty Ltd v ACN 001 452 106 Pty Ltd* (2001) 74 ALJR 862 and *Re Irving* (1877) 7 Ch D 419; *Pullan v Koe* [1913] 1 Ch 9; *Re Gillott's Settlements* [1934] Ch 97; *Palette Shoes Pty Ltd v Krohn* (1937) 58 CLR 1, at 27.
4   *Royal Trust Bank v National Westminster Bank* [1996] 2 BCLC 682, CA; *Re Lewis' of Leicester* [1995] 1 BCLC 428. If, despite such terms, C ignores B's breach of them and, in practice allows B to use the money as B's own, then the trust will have been replaced with a debtor-creditor relationship.

*Trusts do not fail for want of a trustee*

8.8 In the case of a will trust it matters not that the testator fails to appoint trustees[1] or that the appointed trustees predecease the testator[2] or disclaim the trust[3] or are not capable of taking the trust property[4]. The personal representatives will hold the property with power to appoint trustees who can then exercise all the powers vested in the trustees[5]. In the case of inter vivos trusts the settlor must do all that he can to vest the trust property in specific existing persons of full capacity[6] but disclaimer by them[7] or refusal of registration of