**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ST SHIPPING AND TRANSPORT, INC.,

               **Plaintiff,**

    -against-

GOLDEN FLEECE MARITIME INC.,

               **Defendant.**

**07 Civ. 11147 (SAS)**

 

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO MOTIONS**
**TO VACATE MARITIME**
**ATTACHMENT AND TO DISMISS ACTION**

WAESCHE, SHEINBAUM & O'REGAN, P.C.
Attorneys for the Plaintiff
111 Broadway
New York, NY 10006
(212) 227-3550

July 17, 2008

# Table of Contents

Page

Table of Authorities ............................................................. iii

Facts ...................................................................................2

Argument

    <u>POINT 1</u>

    BLANCA'S MOTION SHOULD
    BE DENIED IN ALL RESPECTS....................................................5

        A.  ST SHIPPING NEED ONLY MAKE A SHOWING OF
            PROBABLE CAUSE ....................................................5

        B.  PROBABLE CAUSE IS CLEARLY PRESENT ..............................8

    <u>POINT 2</u>

    GOLDEN FLEECE'S MOTION SHOULD
    BE DENIED IN ALL RESPECTS............................................. 15

Conclusion ...................................................................... 18

# Table of Authorities

Page

CASES:

*AET Inc. v. Procuradoria de Servicos Martimos Cardoso & Fonesca,*
464 F.Supp.2d 241 (SDNY 2007) ............................................................9

*Amstar Corp. v. S/S Alexandros T.,*
664 F.2d 904 (4th Cir. 1981) .............................................. 6-7

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,*
460 F.3d 434 (2d Cir. 2006) ............................................ 5, 6

*Carte Blanche (Singapore) v. Diners Club Intern.,*
758 F. Supp. 908 (SDNY 1991) .......................................... 14

*Chiquita International v. MV Bosse,*
518 F.Supp.2d 589 (SDNY 2007) .................................... 9, 17n

*Continental Insurance Co. v. Adriatic Tankers Shipping Co., S.A.,*
*1995* WL 649942 (E.D.La. 1995)(not officially reported) .........................7

*Cornett v. Weisenburger,* 454 F.Supp.2d 544 (W.D.Va. 2006) .......................... 16

*Dominion Bulk International, S.A. v. Naviera Panoceanica, S.A.C.,*
2006 WL 3408799 (SDNY 2006) (not officially reported) ...................... 11

*Harvey Specialty & Supply, Inc. v. Anson Flowline Equipment Inc.,*
434 F.3d 320 (5th Cir. 2005) .............................................. 16

*HBC Hamburg Bulk Carriers GmbH v. Proteinas y Oleicos S.a.,*
2005 WL 1036127 (SDNY 2005) (not officially reported) ...................... 11

*In re Enron Corp. Securities, Derivatives & "Erisa" Litigation,*
2003 WL 23316646 (S.D.Tex. 2003)(not officially reported) .................. 9n

*Kirno Hill Corp. v. Holt,* 618 F.2d 982 (2d Cir. 1980)................................... 13

*Lorillard Tobacco Co. v. Engida,*
2008 WL 140461 (D.Colo. 1/11/08) (not officially reported).................. 16

*Matter of Holborn Oil Trading Ltd.,*
  774 F. Supp. 840 (SDNY 1991) ............................................................ 13

*Padre Shipping, Inc. v. Yong He Shipping,*
  2008 WL 1869212 (SDNY 4/25/087) (not officially reported).................... 9

*Proshipline Inc. v. Aspen Infrastructures Ltd.,*
  533 F.Supp.2d 422 (SDNY 2/1/08) ................................................... 9, 17n

*Rapture Shipping v. Allround Fuel Trading B.V. Chemoil,*
  2006 WL 2474869 (SDNY 2006)(not officially reported) ..................... 17n

*Ronda Ship Management v. Doha Asian Games Organising Comm.,*
  511 F.Supp.2d 399 (SDNY 2007) ............................................................7

*Salazar v. Atlantic Sun*, 881 F.2d 73 (4th 1989)....................................................8

*Seippel v. Jenkens & Gilchrist, P.C.,*
  2004 WL 2809205 (SDNY 2004)(not officially reported) ...................... 16

*Sherman Family Charitable Foundation, Inc. v. M/V Caribbean Mercy,*
  2007 WL 2012843 (S.D.Ala. 2007) (not officially reported) ......................7

*Thorp v. Scarne,* 599 F.2d 1169 (2d Cir. 1979)........................................... 15-16

*20th Century Fox Film Corp. v. M.V. Ship Agencies, Inc.,*
  992 F. Supp. 1423 (M.D.Fla. 1997) ............................................................7

*Tide Line, Inc. v. Eastrade Commodities, Inc.,*
  2006 WL 4459297 (SDNY 2006)(not officially reported) ..........................7

*Thypin Steel Co. v. Certain Bills of Lading,*
  1996 WL 223896 (SDNY 1996)(not officially reported) ............................8

*Transportes Navieros y Terrestes, S.A. v. Fairmont Heavy Transport N.V.,*
  2007 WL 1989309 (SDNY 2007) (not officially reported) ..................... 7-8

*Winter Storm Shipping Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002) .................. 11

*Wm. Passalacqua Builders, Inc. v. Resnick,*
    933 F.2d 131 (2d Cir. 1991) ................................................................... 14


STATUTES:

F.R.Civ. P. 41 ............................................................................... 15-16

F.R.Civ.P. 83 ..................................................................................... 16

F.R.Civ.P., Supp. Rule B ............................................................. *passim*

F.R.Civ. P., Supp. Rule E ........................................................... 5-6, 8

DR 5-105, 22 NYCRR §1200.24 ..................................................... 12n


ARTICLES:

H. Anderson, *Shipbrokers' Claims for Commissions Revisited: A Comparison Between English and U.S. Law*, 30 Tul. Mar. L. J. 163 (2006) .................. 12-13

M. Islam, *The Arrest of Ship Conventions 1952 and 1999: Disappointment for Maritime Claimants*, 38 J. Mar. L. & Com. 75 (2007) ........................................................................ 12

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ST SHIPPING AND TRANSPORT, INC.,** | 07 Civ. 11147 (SAS) |
| **Plaintiff,** | |
| **-against-** | |
| **GOLDEN FLEECE MARITIME INC.,** | |
| **Defendant.** | |

On December 21, 2007, the Court signed an Order of Maritime Attachment and Garnishment in this action at the request of the Plaintiff, ST Shipping and Transport, Inc. The Order authorized the attachment of up to $380,000 with respect to property of the Defendant, Golden Fleece Maritime Inc. Pursuant to that Order, process of maritime attachment and garnishment was served on Citibank, both initially and by daily supplemental service. On January 18 and 30 and March 17, 2008, Citibank blocked Electronic Fund Transfers ("EFTs") in the total amount of $380,000.

At a conference with the Court on May 28, counsel for Blanca Shipmanagement Co. (who is also counsel for Golden Fleece in this action) advised that Blanca wished to move to vacate the attachment, and a briefing schedule was set. In the initial motion papers Golden Fleece has, in addition, joined to move that the Complaint be dismissed.

The Plaintiff, ST Shipping, respectfully requests that the motions be denied in all respects. For convenience, this memorandum of law is submitted in opposition to both applications.

## FACTS

The facts relevant to the motions can be briefly stated:

Golden Fleece Maritime Inc. was the owner of the vessel *Elli*. In May 2003 Golden Fleece chartered the ship to ST Shipping for a period of six months, although the period was eventually extended to about September 2006. The cargo to be carried under the contract was "crude or dirty petroleum products."

In 2005 a dispute arose between the parties. In the charter party Golden Fleece warranted the condition of the *Elli*, both at the start of the charter and during the contract period. ST Shipping contended that Golden Fleece had failed to maintain the *Elli* in compliance with regulations promulgated to implement the provisions of the International Convention for the Prevention of Pollution from Ships (1973), known as MARPOL.

In December 2005 Golden Fleece started an action against ST Shipping in the High Court of Justice in London for amounts it argued were due under the contract. The amount of its claim was eventually put at about $3.2 million. ST Shipping counterclaimed for its damages resulting from Golden

Fleece's failure to meet the MARPOL pollution regulations. The principal amount of ST Shipping's claim was $481,307.94.

While that lawsuit was pending in London, ST Shipping started an action in the Southern District to obtain security under the admiralty rules for its maritime claim in England. That action, *ST Shipping and Transport, Inc. v. Golden Fleece Maritime Inc.*, 07 Civ. 3730 (DLC), was before The Honorable Denise L. Cote. Judge Cote signed a Rule B Order, but nothing was attached.

On August 2, 2007, the court in London entered judgment, completely dismissing Golden Fleece's claim and awarding ST Shipping $481,307.94 on its counterclaim.

On August 22 ST Shipping dismissed its action before Judge Cote as it no longer had a maritime claim (it now had an English court judgment). The action was automatically terminated by the filing of a Notice of Voluntary Dismissal.

Earlier that year, in March, the solicitors for ST Shipping had given notice of further claims against Golden Fleece concerning the *Elli*. In the charter party Golden Fleece warranted a) the ship's speed, and b) its consumption of fuel and oil. ST contended that the ship had failed to perform as promised, with the amount of damages to be determined. ST Shipping

demanded the production of various ship documents, such as the log books, to enable the claim to be calculated.

In October 2007, having already lost one case and with another claim on the way, Golden Fleece agreed to sell the *Elli* to a company called Blanca Shipmanagement Co. Although the agreement was purportedly made then, the sale of the ship did not close until about March 17, 2008.

In December 2007 ST Shipping started the present action against Golden Fleece on the performance claims, which were now in a London arbitration. The Court signed a Rule B Order, and funds were attached, up to the full amount of the Order ($380,000), during January-March, 2008.

In May 2008 ST Shipping's counsel requested a pre-motion conference with the Court. ST Shipping had amended its complaint to increase the amount of its claim to about $1.1 million and wanted a new Rule B order. Counsel for Golden Fleece did not agree, and consequently the Court met with counsel on May 28.

At that conference the question of a new Rule B order was quickly resolved. In addition, however, Golden Fleece's counsel advised that 1) the *Elli* had been sold in the fall of 2007, 2) as part of this sale the funds at issue had been "assigned" to the purchaser, 3) the purchaser wanted to vacate the attachment as to those funds, and 4) for the purposes of this motion Golden Fleece's counsel was also representing the purchaser (although he did not

remember its name). A briefing schedule was set. Nothing was said about a motion by Golden Fleece.

For the reasons that follow, the motions should be denied in all respects.

## ARGUMENT

### POINT 1

BLANCA'S MOTION SHOULD
BE DENIED IN ALL RESPECTS

A.    ST Shipping Need Only Make A Showing Of Probable Cause

The issue for resolution on this motion is actually quite narrow. The leading decision in this area is *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434 (2d Cir. 2006); and there the Second Circuit held that in a post-seizure hearing the plaintiff must show four elements.  According to the Second Circuit,

> We therefore hold that, in addition to having to meet the filing and service requirements of Rules B and E, an attachment should issue if the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment. Conversely, a district court must vacate an attachment if the plaintiff fails to

> sustain his burden of showing that he has
> satisfied the requirements of Rules B and E.

At 445 (footnote omitted).

In its motion papers Blanca does not contend that ST Shipping failed in meeting the filing and service requirements of Rules B and E. Likewise, it does not contend that a) ST Shipping does not have a valid *prima facie* admiralty claim against Golden Fleece, b) Golden Fleece can be found in this District, or c) there is a statutory or maritime law bar to the attachment. The only disputed issue is whether property of Golden Fleece can be found in this District, *i.e.*, whether Golden Fleece has an attachable property interest in the funds blocked at Citibank.

Although it is clear from *Aqua Stoli* that the initial burden is on the plaintiff, the Second Circuit does not discuss the standard of proof required on a motion to vacate under Rule E. That point is likewise not addressed in the Blanca/Golden Fleece motion papers, and perhaps for a good reason: The burden placed on ST Shipping is a light one.

While there is not much authority concerning the Rule E, post-seizure hearing, the cases are consistent in holding that all the plaintiff need demonstrate is at most a probable cause for the attachment.

The principal decision is *Amstar Corp. v. S/S Alexandros T.*, 664 F.2d 904 (4th Cir. 1981), in which the Fourth Circuit upheld the constitutionality of

the Rule E procedure. The appellate court stated: "A shipowner challenging the validity of an arrest is constitutionally entitled to a prompt post-arrest hearing in which the plaintiff has the burden of showing *probable cause* for the arrest." 664 F.2d at 912 (emphasis added).

Courts since then have followed this standard of review. *See, e.g., 20ᵗʰ Century Fox Film Corp. v. M.V. Ship Agencies, Inc.*, 992 F. Supp. 1423, 1427 (M.D. Fla. 1997)("probable cause and/or reasonable grounds for the issuance of the attachment"); *Continental Insurance Co. v. Adriatic Tankers Shipping Co., S.A.*, 1995 WL 649942, *1 (E.D.La. 1995)(not officially reported). *See also Sherman Family Charitable Foundation, Inc. v. M/V Caribbean Mercy*, 2007 WL 2012843, *2 (S.D.Ala. 2007)(not officially reported).

Following Chief Judge Wood's decision in *Tide Line, Inc. v. Eastrade Commodities, Inc.*, 2006 WL 4459297 (SDNY 2006)(not officially reported) rulings in this District have held that the plaintiff need only make a lesser *prima facie* showing, although it is not always clear whether all four *Aqua Stoli* elements are meant or just the first requirement of a valid admiralty claim. *See Proshipline Inc. v. Aspen Infrastructures Ltd.*, 533 F.Supp.2d 422, 426 (SDNY 2/1/08)(Plaintiff "must simply meet a prima facie standard."); *Ronda Ship Management v. Doha Asian Games Organising Committee*, 511 F.Supp.2d 399, 403 (SDNY 2007); *Transportes Navieros y Terrestes, S.A. v.*

*Fairmont Heavy Transport N.V.*, 2007 WL 1989309, *3-4 (SDNY 2007)(not officially reported).

In any event, a motion under Rule E(4), such as the one by Blanca, is not intended to be the final disposition of a claim for which a valid attachment has been made. As the Third Circuit held in *Salazar v. Atlantic Sun*, 881 F.2d 73, 79-80 (3rd Cir. 1989), "The post-arrest hearing is not intended to resolve definitively the dispute between the parties, but only to make a preliminary determination whether there were reasonable grounds for issuing the arrest warrant, and if so, to fix an appropriate bond." *See also Thypin Steel Co. v. Certain Bills of Lading*, 1996 WL 223896, *4 (SDNY 1996)(not officially reported).

B.     Probable Cause Is Clearly Present

Here, there is no dispute that a) Citibank blocked EFTs totaling $380,000 in this District, b) the monies were destined to Golden Fleece's bank account in Athens, and c) the monies represented hire payments from Indian Oil Corp. to Golden Fleece with respect to Indian Oil's charter of the *Elli*. These facts taken together constitute probable cause that Golden Fleece has a property interest in the attached funds.

In its motion Blanca seeks to counter this *prima facie* showing by arguing that the attached EFTs actually are property belonging to it in trust. The documentary support for this position is the Memorandum of Agreement

of October 26, 2007, by which Golden Fleece agreed to sell the *Elli* to Blanca (or another company to be named), and, more importantly, a Side Letter of the same date.[1] According to Mr. Duncan McDonald, Golden Fleece's London solicitor, these items constitute a trust arrangement under English law.

There are three problems with this argument. The first is that decisions in this District have already rejected the contention that an attachment can be vacated when the funds being transferred to a defendant's account actually belong to another. *See Chiquita International v. MV Bosse*, 518 F.Supp.2d 589, 593-94 (SDNY 2007)(Leisure, DJ); *AET Inc. v. Procuradoria de Servicos Martimos Cardoso & Fonesca*, 464 F.Supp.2d 241, 245 (SDNY 2007)(Chin, DJ); *Padre Shipping, Inc. v. Yong He Shipping*, 2008 WL 1869212, at *6-7 (SDNY 4/25/08)(Keenan, DJ)(not officially reported). In *Padre Shipping*, Judge Keenan quotes a portion of Judge Leisure's analysis in *Chiquita*, and the same reasoning is applicable here:

> "[I]t is undisputed that the funds were directed to or from defendant['s] bank accounts. [Defendant's] intended use of the funds that were in its account is irrelevant here. Therefore, the restraint of funds was proper under Second Circuit precedent.

At *7, quoting 518 F.Supp.2d at 594.

---

[1] These items are Exhibits 1 and 2 to the Declaration of Nancy R. Peterson, Esq. Ms Peterson does not have personal knowledge of these documents, and consequently Blanca's proof is inadmissible. *See, e.g., In re Enron Corp. Securities, Derivatives & "Erisa" Litigation*, 2003 WL 23316646, *2 (S.D.Tex. 2003)(not officially reported).

A second problem with Blanca's argument is that it is an incorrect application of English law. Under that law, the creation of a trust instrument turns on the parties' intent; and, particularly in a commercial context, that intent is typically expressed clearly. Yet there is nothing in the Memorandum of Agreement, and little in the Side Letter, to indicate that a special trust relationship was intended. The text, for example, does not identify Golden Fleece as a "settlor" or Blanca as a "beneficiary." In addition, the documents fail to clearly identify both the intended beneficiary and the property to be held in trust.

As indicated in the Declaration of Edward Mills-Webb, Mr. McDonald has not previously indicated in communications with him that the attached property was subject to the superior claim of a trust beneficiary. Mills-Webb Declaration, ¶10. Similarly, when the parties appeared before the Court on May 28, counsel for Golden Fleece/Blanca made no mention of a trust arrangement, but described the situation as an assignment. Foster Affidavit, ¶15.

If the Side Letter does not create a trust, then what does it do? According to Mr. Mills-Webb, that document simply creates a contractual right on the part of Blanca in certain hire payments to be received by Golden Fleece. Golden Fleece may have an obligation to Blanca to account for the funds, but the monies still belong, at least in the first instance, to Golden

Fleece. Again according to Mr. Mills-Webb, under English law an assignor retains a property interest in assigned property and this interest can be attached. Mills-Webb Declaration, ¶20.

Rule B does not require that Golden Fleece be the owner of the attached property. According to Judge Buchwald in *HBC Hamburg Bulk Carriers GmbH v. Proteinas y Oleicos S.a.*, 2005 WL 1036127 (SDNY 2005)(not officially reported), "Rule B is intended to impact *any property* in which the defendant has a legal interest. Nothing in the language of Rule B requires that the property attached be the exclusive property of the defendant, nor that we adjudicate the competing property interests of the sending-payor and the recipient-beneficiary in an EFT at an intermediary bank." At *4; emphasis added.

This conclusion is consistent with the Second Circuit's view in *Winter Storm Shipping Ltd. v. TPI*, 310 F.3d 263, 276 (2d Cir. 2002) that, with reference to the property language in Rule B, "It is difficult to imagine words more broadly inclusive than 'tangible or intangible.'" *See also Dominion Bulk International, S.A. v. Naviera Panoceanica, S.A.C.*, 2006 WL 3408799, *2-3 (SDNY 2006)(not officially reported).

Consequently, even if Golden Fleece validly assigned the *Elli* hire to Blanca, the Defendant retained a property interest in the EFTs sufficient to support the Rule B attachment in this case.[2]

A final problem with Blanca's argument is highlighted by a statement of its counsel: "Blanca is a wholly separate entity from Golden Fleece and the MOA and side agreement were entered into at arms length and in good faith." Peterson Declaration, ¶23. How she knows this is not disclosed.

Ships are frequently owned by one-ship corporations and then managed as part of a common fleet. *See, e.g.*, M. Islam, *The Arrest of Ship Conventions 1952 and 1999: Disappointment for Maritime Claimants*, 38 J. Mar. L. & Com. 75, 79 (2007)("In modern shipping practice, many fleets operate within large shipowning groups, owned and controlled by the same parent corporation or holding company, but with each vessel in the fleet or group legally owned by (in other words, registered in the name of) a separate one-ship company."); H. Anderson, *Shipbrokers' Claims for Commissions*

---

[2] Nothing in the papers indicates that Golden Fleece has passed on to Blanca *any* of the Indian Oil hire, let alone paid Blanca for the attached EFTs that had been purportedly assigned. Under English law Blanca consequently has a claim against Golden Fleece for the unpaid monies. *See* Mills-Webb Declaration at ¶20. Given the potentially adversarial relationship between Golden Fleece and Blanca, it is not clear how the same counsel can represent both. *See* DR 5-105, 22 NYCRR §1200.24. Unless, of course, Golden Fleece and Blanca are actually both part of the same family.

*Revisited: A Comparison Between English and U.S. Law*, 30 Tul. Mar. L. J. 163, 173 (2006).

That appears to be the case here as well. Prior to March 17, 2008 (the closing date on the sale of the ship), the *Elli* was part of the "Liquimar" fleet. Liquimar is a shipping company in Athens, which manages a fleet of about a dozen ships. Each ship, including the *Elli*, is separately owned. There is no indication that the sale to Blanca has changed the situation, except for the nominal owner. For example, the Liquimar website still continues to list the *Elli* as part of its fleet.

Under federal common law, the corporate form will be ignored and liability imposed on another corporate entity, or the principals, if it is shown that the interconnected organization was utilized to perpetrate a fraud *or* where one entity or individual(s) so dominated another that it was, in effect, carrying on the principal's business. *See Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir. 1980). In a maritime case it is sufficient to show that the parent or controlling principal so dominated the subsidiary or other units within the group such that they were mere tools or instrumentalities to carry on the overall business of the principal. *See Kirno Hill* at 985 and *Matter of Holburn Oil Trading Ltd.*, 774 F. Supp. 840, 844 (SDNY 1991).

While there is no precise test to determine whether an entity is an alter ego of another, in general the corporate veil may be pierced where it can be

demonstrated that the parent or controlling entity was the "true" or prime mover behind the subsidiary. *See Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 139 (2d Cir. 1991)(listing the various factors to be considered in determining whether to pierce the corporate veil). *See also Carte Blanche (Singapore) v. Diners Club Intern.*, 758 F. Supp. 908, 918 (SDNY 1991). Obviously, many of the documents required to establish these elements are solely within the control of Liquimar, Golden Fleece, and Blanca; and extensive discovery on the issue would be necessary.[3]

Nonetheless, with the arbitration presently pending in London there is no immediate need for the Court to resolve issues either of English law or of corporate veils. If ST Shipping is unsuccessful in the arbitration, then all these issues become moot.[4] It is sufficient for the vacatur motion pending before the Court to find that ST Shipping has made a sufficient showing for its attachment. The final disposition of the funds (and any discovery that may be needed) can await the outcome of the London proceedings.

The Blanca motion should therefore be denied.

---

[3] The above two paragraphs are largely lifted from Ms Peterson's Memorandum of Law in *Route Holding Inc. v. International Oil Overseas Inc.*, 06 Civ. 3428 (PKC)(docket item #9, pp. 12-13). Since she well states the federal law relevant to piercing the corporate veil in a Rule B situation, there seems no point in reinventing the wheel.

[4] To the extent that there is a concern about the loss of interest during the pendency of the arbitration, the attached funds can be transferred to the Court's CRIS account.

POINT 2

GOLDEN FLEECE'S MOTION SHOULD
BE DENIED IN ALL RESPECTS

In addition to Blanca's motion to vacate, Golden Fleece also moves to dismiss the action entirely. The argument is that the Court, in the exercise of its equitable powers, should punish ST Shipping for the malfeasance of its counsel. The argument is nonsense and should be rejected.

Golden Fleece's argument is based on the view that at the time the present action was filed (December 2007) the prior matter before Judge Cote was still pending. Therefore, counsel acted egregiously, not only in failing to note the related action on the Civil Cover Sheet, but also in the affidavit submitted in support of the Rule B application. The easy answer to this position is Rule 41.

In August 2007, after the High Court in London had converted ST Shipping's MARPOL claim into a court judgment, ST Shipping voluntarily dismissed its action before Judge Cote by filing a Notice of Voluntary Dismissal. Under Rule 41(a)(1)(i), that Notice terminated the action automatically and of right.

The law on a voluntary dismissal is clear. As the Second Circuit has said,

> Rule 41(a)(1)(i) is the shortest and surest route
> to abort a complaint when it is applicable. So long as
> plaintiff has not been served with his adversary's
> answer or motion for summary judgment he need do no
> more than file a Notice of dismissal with the Clerk.
> That document itself closes the file. There is nothing
> the defendant can do to fan the ashes of that action
> into life and the court has no role to play. This is a
> matter of right running to the plaintiff and may not
> be extinguished or circumscribed by adversary or
> court. There is not even a perfunctory order of court
> closing the file. Its alpha and omega was the doing of
> the plaintiff alone.

*Thorp v. Scarne*, 599 F.2d 1169, 1176 (2d Cir. 1979). *See Seippel v. Jenkens &*

*Gilchrist, P.C.,* 2004 WL 2809205, at *1 (SDNY 2004)(Scheindlin, DJ)(not

officially reported). *See, e.g., Harvey Specialty & Supply, Inc. v. Anson*

*Flowline Equipment Inc.,* 434 F.3d 320, 324 (5th Cir. 2005); *Lorillard Tobacco*

*Co. v. Engida*, 2008 WL 140461, *2 (D.Colo. 1/11/08)(not officially reported).

Golden Fleece refers to the ECF instructions that require dismissal

papers to be emailed to the Clerk instead of simply filed. Yet those

instructions state that they are for "[a]ny document that requires the

signature of a Judge," which is not the case for a Notice of Voluntary

Dismissal. *Thorp; Seippel, supra*. In any event, the Federal Rules take

priority over local administrative provisions. *See* F.R.Civ.P. 83(a)(1); *Cornett*

*v. Weisenburger*, 454 F.Supp.2d 544, 549 (W.D.Va. 2006).

Consequently, when counsel filled out the Civil Cover Sheet in

December 2007, the correct answer was "No" to the question "Do you claim

this case is related to a civil case *now pending* in S.D.N.Y." (emphasis added).

Golden Fleece also argues that when ST Shipping requested a Rule B order in the present case its counsel knowingly submitted a false affidavit, a serious charge and not to be made lightly. The contested statement is in the December 10, 2007, affidavit of John R. Keough, III, Esq., when he swears at paragraph 6 that "This application is the Plaintiff's first request for such relief made to any court."

Yet this statement is plainly true. In the case at bar, there had been no prior applications for relief under Rule B. The affidavit was submitted almost contemporaneously with the action being filed. Nor does the prior action before Judge Cote make the statement false. That action concerned an entirely different claim (violation of the MARPOL pollution regulations) for which different relief was sought.

In short, the argument is nonsense.[5]

---

[5] Golden Fleece cites *Chiquita International, supra*, in support of its position. Actually, a better case for its argument is Judge Keenan's decision in *Rapture Shipping v. Allround Fuel Trading B.V. Chemoil*, 2006 WL 2474869 (SDNY 2006)(not officially reported). Both cases are distinguishable, however, because in both there was another pending action involving the same claim. Here, by contrast, the prior case had been terminated, and it involved a different claim. *See also Proshipline Inc., supra*.

## CONCLUSION

The motions by Defendant Golden Fleece and by non-party Blanca

should be denied in all respects.


Dated: New York, New York
        July 17, 2008


          WAESCHE, SHEINBAUM & O'REGAN, P.C.
          Attorneys for the Plaintiff

By: _____
          John R. Foster
          Attorney ID: JF3635
          111 Broadway, 4th Floor
          New York, NY 10006
          (212) 227-3550